500 So.2d 699 (1987)
NORTHWEST ORIENT AIRLINES and Underwriters Adjusting Company, Appellants,
v.
Hugo GONZALEZ, Appellee.
No. BK-422.
District Court of Appeal of Florida, First District.
January 6, 1987.
*700 Cesar A. Armstrong of Lanza, Sevier & O'Connor, Coral Gables, for appellants.
Irving J. Whitman of Whitman, Wolfe, Gross & Schaffel, P.A., Miami, for appellee.
MILLS, Judge.
Northwest Orient Airlines and Underwriters Adjusting Co. (E/C) appeal from an order of the deputy commissioner requiring it to pay certain medical bills incurred in the treatment of Gonzalez' knees, and awarding temporary total disability benefits during the hospitalization and recovery period related to that treatment. We affirm in part, reverse in part and remand for further proceedings.
Gonzalez, employed by the E/C as a baggage handler, suffered injuries to his neck and right shoulder and arm in industrial accidents occurring in 1972 and 1975. A claim for benefits relating to both accidents was heard in 1977 and, in an order dated 20 April 1978, the D/C held that the injuries had left Gonzalez 40% permanently partially disabled and awarded him 140 weeks of compensation.
In December 1984, Gonzalez filed a claim for benefits relating to a third injury to his shoulder. In April 1985, that claim was consolidated for hearing with the claim involved herein; namely, for payment of medical bills relating to December 1983 knee surgery and for TTD benefits for the period of hospitalization and recovery therefor, 13 December 1983 to 10 February 1984. It was Gonzalez' contention that his knee condition, torn medial menisci, had occurred at the time of the 1975 injury. The E/C countered first that the 1978 order was res judicata as to any injuries occurring in the 1975 accident. It also alleged that, not only was the treatment of the knee unauthorized, the condition was not causally related to the 1975 accident.
The consolidated claims were considered at several hearings between May and November 1985. With regard to the knee injury, Gonzalez testified that it had occurred in the course of the 1975 accident, but could recall neither reporting knee problems at that time nor exactly when he was first treated for those problems. Dr. Lopez, Gonzalez' authorized and treating physician since the 1972 accident, testified in one deposition that he "seemed to remember" that the knee problem stemmed from a fall at work in 1977. However, in a report placed in Gonzalez' file in 1984, he wrote that the trouble began in the work-related accident in 1975 and that it was "the most important injury" with regard to the knees.
In 1980, Dr. Lopez referred Gonzalez to Dr. Kalbac for evaluation of the knee problems, to determine whether there was something organically wrong or whether the pain was emanating from a back injury. The referral and evaluation was authorized by the E/C, but when Kalbac recommended the performance of an arthrogram, the E/C refused to authorize it. Despite Dr. Lopez' repeated requests for the procedure, at no time did the E/C authorize treatment for the knees.
On 13 December 1983, Gonzalez was admitted to the hospital by Dr. Rothman for an abdominal problem related to pain medication prescribed for his shoulder injury; the compensability of this condition is not contested. While in the hospital, however, Gonzalez continued to complain of knee pain. Dr. Lopez was called in and referred Gonzalez to Dr. Levitt, an orthopedic surgeon. After an examination, during which Gonzalez related the origin of his knee pain to sometime in 1981, Levitt diagnosed him as suffering from tears of the medial menisci. He recommended arthroscopic surgery, and performed it during this same admission on 27 December 1983. Gonzalez was discharged on 13 January 1984 and returned to work on 10 February 1984.
In his December 1985 order, the D/C found that, based on Dr. Lopez' medical reports and testimony, Gonzalez sustained *701 knee injuries in the 1975 accident. He did not address the E/C's contention that the 1978 order precluded such a finding. The order proceeded to require the E/C to pay Dr. Levitt's bill for treatment of the knee condition in that the referral to Dr. Levitt was made by Gonzalez' authorized physician, Dr. Lopez. The D/C also awarded TTD benefits from 13 December 1983 to 10 February 1984, based on Gonzalez' testimony that he was hospitalized for thirty days and out of work an additional 29 days.
We reject the E/C's contention that the D/C was barred by the 1978 order from considering the compensability of the knee condition. While compensation orders are governed by the same principles of res judicata as are judgments of a court, Wellcraft Marine Corp. v. Turner, 435 So.2d 864, 865 (Fla. 1st DCA 1983), an essential element of that doctrine is the identity of the thing sued for. Boston v. Budget Luxury Inns, 474 So.2d 355, 357 (Fla. 1st DCA 1985). In 1977, Gonzalez sought permanent partial benefits for injuries to his right arm and shoulder incurred in 1972 and 1975; the instant claim seeks the payment of medical bills and TTD benefits relating to a knee injury allegedly caused by that same accident.
The E/C's argument would be more well taken had it presented evidence that a claim for the knee was mature at the time of the earlier proceeding, but that Gonzalez had failed to present evidence thereon. See Green Thumb Corp. v. Britten, 393 So.2d 613 (Fla. 1st DCA 1981). However, the E/C presented no such evidence. In fact, the record shows that the knee condition did not concern the treating physician sufficiently to request an evaluation until 1980, two years after the earlier order, which evaluation was authorized by the E/C. Therefore, we decline to reverse on grounds of res judicata.
The award of medical benefits must nevertheless be reversed, in that we find no competent substantial evidence that the knee condition was causally related to a compensable accident. The E/C does not dispute, and we acknowledge, the presence in the record of a medical report stating that Gonzalez' knee problems began with the 1975 accident. However, it is well settled that the conclusion of an expert based on facts not supported by the evidence has no evidential value. Arkin Construction Co. v. Simpkins, 99 So.2d 557 (Fla. 1957), accord Braddock v. School Board of Nassau County, 455 So.2d 394 (Fla. 1st DCA 1984), Joanos, J., concurring.
Here, Lopez stated in the 1984 medical report that "based on a review of his records," Gonzalez' knee problems began with the 1975 industrial accident. However, he conceded at the hearing that those records reflected no trauma to the knees in 1975, and no such medical records were entered into evidence. Therefore, we are compelled to find that the medical opinion reflected in the 1984 report is based on facts not supported by the evidence and cannot support a finding that Gonzalez' knee condition was causally related to his 1975 compensable accident. The only other evidence regarding the origin of that condition was Lopez' testimony that the trouble began after a 1977 fall and Dr. Levitt's notation that Gonzalez had related his pain to sometime in 1981. Because the D/C's finding of causation is not supported by competent substantial evidence, it must be reversed.
However, assuming arguendo that the finding of causal connection was correct, we still must reverse on the ground that Dr. Levitt's treatment was unauthorized by the E/C. In McKinney v. McKinney Farms, 380 So.2d 469 (Fla. 1st DCA 1980), we held that, where the referral of a claimant to a doctor is made by an authorized treating physician in the exercise of his own judgment and not at the request of the claimant, referral and subsequent hospitalization are in the normal progression of authorized treatment and the E/C is responsible therefor. But we also noted:
For further cases ... we suggest that the authorized physician contact the carrier and secure authorization before *702 subjecting it to financial responsibility for such treatment and hospitalization.
McKinney at 470. We subsequently held in Jones v. Plantation Foods, 388 So.2d 590 (Fla. 1st DCA 1980), that the implied authorization which results when an authorized physician refers a claimant to another doctor extends to evaluation and not to treatment. Jones at 591 (emphasis supplied).
In Atkins v. Greenhut Construction Co., 447 So.2d 268 (Fla. 1st DCA 1983), an authorized physician referred the claimant to a second doctor for evaluation, which the E/C authorized. The second doctor recommended surgery, which the E/C refused to authorize; the doctor proceeded to perform the surgery and to bill the E/C. The D/C denied the claim for payment of this bill and this court affirmed, finding that the E/C had made it clear that the treatment was not authorized. Atkins at 271.
In this case, Lopez was an authorized physician who referred Gonzalez to Dr. Levitt. However, as in Atkins, the E/C had stated numerous times that surgery would not be authorized in the absence of further evidence that the knee condition was related to a compensable accident. The record reflects no attempt to obtain prior authorization by adducing such evidence before a D/C, nor that the surgery was done on an emergency basis, rendering it impracticable for Gonzalez to seek that authorization. See Foster Wheeler Energy Group v. Fairhurst, 405 So.2d 438, 439 (Fla. 1st DCA 1981). Because the record reflects that Dr. Levitt's bill was for treatment, i.e. surgery, the referral by an authorized physician does not operate to make the E/C responsible therefor and the award of payment of that bill must be reversed.
The E/C also alleges error in that the D/C denied Gonzalez' claim for permanent disability benefits without prejudice, again arguing that maximum medical disability had been determined in the never-modified 1978 order, precluding any implication that Gonzalez was not yet at MMI. For the reasons stated earlier, we do not find the 1978 order res judicata on the issue of Gonzalez' alleged knee injury. However, because we find that Gonzalez did not demonstrate that his knee injury was causally related to a compensable accident, that finding would be res judicata against any permanent benefits relative to that injury which Gonzalez might seek in the future.
Finally, the E/C challenges the award of TTD benefits for the period of Gonzalez' hospitalization and recovery, 13 December 1983 to 10 February 1984. Based on the foregoing, any portion of the TTD benefits attributable to the knee surgery must be reversed. However, Gonzalez was initially hospitalized for abdominal pain, the compensability of which is not disputed. Therefore, we remand for a determination of what portion of the TTD benefits, if any, are attributable to the abdominal condition and an award of only those benefits.
Affirmed in part, reversed in part and remanded.
BOOTH, C.J., concurs.
WENTWORTH, J., dissents with opinion.
WENTWORTH, Judge, dissenting.
I would affirm the award for medical costs and temporary disability during hospitalization because (1) the deputy had legally adequate evidence on causal relation, and because (2) the arthrogram procedure (even assuming it served therapeutic as well as diagnostic purposes) was well within the ordinary referral authority of the authorized primary treating physician under the circumstances here. See Shafer & Miller v. Moore, 499 So.2d 871 (Fla. 1st DCA 1986), applying recent decisions of this court consistent with the long standing view that a claimant who has cooperated with treatment under supervision of his authorized physician "should not be penalized because of a communication gap" between the carrier and a doctor to whom claimant was referred by the authorized treating physician. The need for and propriety of the treatment rendered was an issue for the deputy.
*703 Because I am unable to conclude that direct knee trauma was indispensable to the deputy's finding or to the medical expert's opinion on causal relation, reversal on that ground appears to me to be an improper exercise of appellate function.
Although the majority opinion further errs in specifying lack of identity of issues as a basis for rejecting the res judicata defense, that defense may nevertheless be properly rejected on other grounds. No statute of limitations issue was presented, and whether or not the claim or order is designated as one for modification, the particular benefits claimed and the factual findings on which they rest may be regarded as a proper award under section 440.28, Florida Statutes. For that reason, I think the res judicata doctrine has no applicability.
I would therefore affirm, finding the terms "without prejudice," used in the order's denial of permanent benefits, to be mere surplusage and without decretal effect, since we cannot anticipate what issues, statutory or otherwise, may arise if such benefits are considered.