540 So.2d 874 (1989)
Sylvia GREEN, Appellant,
v.
CHROMALLOY-TURBOCUMBUSTOR, and INA/Aetna, Appellees, and
Florida Department of Labor and Employment Security, Division of Workers' Compensation, Co-Appellee.
No. 88-271.
District Court of Appeal of Florida, First District.
March 7, 1989.
Richard A. Kupfer, of Wagner, Nugent, Johnson, Roth, Romano, Eriksen & Kupfer, P.A., West Palm Beach, for appellant.
Kenneth W. Moffet, of Roberts & Reynolds, P.A., West Palm Beach, for appellees.
*875 JOANOS, Judge.
The claimant in this workers' compensation case appeals the deputy commissioner's order denying her claim for compensation benefits and medical treatment. The points presented for review are: (1) the deputy commissioner's denial of all medical benefits, including diagnostic costs, and (2) the deputy commissioner's failure to apply the logical cause doctrine to determine the question of compensability. We affirm in part, and reverse in part.
The claimant worked for the employer as a "deburrer," i.e., grinding and finishing metal parts that were used in the cooling systems for turbine jet engines. Her job duties required her to carry and lift engine parts, some of which weighed four to five pounds each. Occasionally, claimant had to lift and carry fixtures that weighed approximately fifty pounds. The symptoms for which claimant sought compensation and medical care began when she was at work on July 9, 1987. Claimant testified that after lunch on that day, she began to experience pain in her left arm, the left side of her neck, her shoulder blade, and low back. Claimant reported her problems to a supervisor, and a short while later she went home early. Although still in pain, claimant worked the following day, a Friday, and then worked her normal Saturday hours of 6:00 a.m. until noon. On Saturday afternoon, claimant was taken to the hospital emergency room where the physician on duty advised her to see an orthopedist.
Claimant called her supervisor on Monday, to advise that hospital personnel told her there was something wrong with her neck. By Friday, claimant's pain had increased. The employer arranged for her to be treated by Dr. Mastellone, a chiropractor. Dr. Mastellone told claimant she had a pinched nerve brought on by work. After several treatments by Dr. Mastellone, claimant called Mr. Ciarcia, the health and safety manager for the employer, to tell him that her condition had worsened. Mr. Ciarcia testified that when claimant called, she was upset and crying. Mr. Ciarcia drove to claimant's home and transported her first to Dr. Mastellone's office, and then, on Dr. Mastellone's recommendation, to the office of Dr. Lazarus, an orthopedic surgeon. Dr. Lazarus examined claimant, and ordered x-rays of her lumbar and upper spine. He was so concerned by claimant's complaints of numbness in the left side of her face, left arm, and left leg, that he telephoned a neurologist, Dr. Platzek, while claimant was in his office. Based on the one occasion that he saw claimant, Dr. Lazarus was unable to relate her complaints to her work with the employer.
After the appointment arranged by Dr. Lazarus by telephone, Mr. Ciarcia drove claimant to Dr. Platzek's office. Dr. Platzek ordered various diagnostic tests, which revealed lumbar muscle spasm, cervical muscle spasm, and a bulging at the L4-5 level of claimant's spine. According to Dr. Platzek, a bulging would be more likely to occur in someone forty or fifty years old, but was unusual in a person of claimant's age of thirty-one. Dr. Platzek said his office staff obtained the carrier's clearance for his treatment of claimant on July 20, 1987. In Dr. Platzek's opinion, based on the subjective data and history given to him by claimant and on the clinical objective findings he documented, claimant's condition is causally related to her employment. Dr. Platzek treated claimant with medication, and wrote a prescription for physical therapy three times a week with Dr. Blackman.
Dr. Blackman, chiropractor, treated claimant for pain in her lower and midback, left leg, and left arm and shoulder. He said he found nothing to indicate that claimant was a malingerer. He, like Dr. Platzek, concluded that claimant's symptoms are work related. Dr. Blackman predicated his opinion on the history related to him by claimant concerning her work activities, and his examination which revealed that claimant has a bulging disc.
At the request of employer and carrier, Dr. MacMillan, neurosurgeon, examined claimant six days after the final hearing. His deposition was taken shortly after the examination. Dr. MacMillan's examination revealed tenderness on the left side of claimant's body, and generalized muscle *876 weakness which was more pronounced on the left side than on the right. He reviewed the reports and test results obtained by Dr. Lazarus and Dr. Platzek, but expressly rejected the thermogram test results, stating that in his opinion a thermogram is not a legitimate test. Although Dr. MacMillan accepted the validity of the other tests performed, he attributed no particular significance to them, other than as an indicator that claimant might have pain. Similarly, he testified that claimant's bulging lumbar spine was not an abnormal condition for a person of claimant's age. On the basis of his examination, Dr. MacMillan opined that within a reasonable degree of medical certainty, claimant does not have a valid work-related injury.
The deputy commissioner found that in the histories claimant gave to various physicians, she had not identified a specific event or identifiable cause for her complaints. The deputy commissioner rejected the opinions of Dr. Platzek and Dr. Blackman as to causal relationship, and further found that Dr. Blackman was not authorized to treat claimant. Based on the opinion of Dr. MacMillan, the deputy commissioner found that claimant's complaints had not been corroborated by any legitimate diagnostic procedure, and that there was no relationship between her work duties and her present complaints.
At the outset, we note that during the pendency of this appeal, employer and carrier filed a motion to strike Appendix A to claimant's brief, on grounds that it is unnecessary to an understanding of the issues, and includes materials outside the record. See Fla.R.App.P. 9.220. Appendix A to claimant's brief contains an excerpt from the 1988 edition of the Florida Workers' Compensation Reimbursement Manual. The contested material attests to the validity of thermographic testing and, among other things, provides guidelines for authorization of thermography. We find this material to be consistent with the "other authorities" contemplated by Florida Rule of Appellate Procedure 9.220, and therefore deny the motion to strike. See, generally, Padovano, Florida Appellate Practice, § 12.6 (1988).
With regard to the deputy commissioner's denial of all medical benefits, it is well settled that prior authorization is not a prerequisite to employer/carrier responsibility for emergency medical care. Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256 (Fla. 1st DCA 1987); Usher v. Cothron, 445 So.2d 387, 388 (Fla. 1st DCA 1984). Furthermore, when "the purpose of a diagnostic test is to determine the cause of a claimant's symptoms, which symptoms may be related to a compensable accident, the cost of the diagnostic test is compensable." Sumner v. Gardinier, Inc., 526 So.2d 1068, 1070 (Fla. 1st DCA 1988); Sanchez v. Security Sales Co., 522 So.2d 435, 436 (Fla. 1st DCA 1988), quoting Nealy v. City of West Palm Beach, 491 So.2d 585, 586 (Fla. 1st DCA 1986).
In much the same vein, the referral of a claimant by an authorized physician to another physician, is compensable if the referral was made in the exercise of the treating physician's own judgment, and not just at the request of the claimant. Northwest Orient Airlines v. Gonzalez, 500 So.2d 699, 701 (Fla. 1st DCA 1987); Shafer & Miller, Inc. v. Moore, 499 So.2d 871, 873 (Fla. 1st DCA 1986); Sloan v. Concrete Sciences, 382 So.2d 411 (Fla. 1st DCA 1980). This implied authorization which results when an authorized physician refers a claimant to another doctor for an evaluation extends only to the evaluation, and does not encompass treatment. Jones v. Plantation Foods, 388 So.2d 590 (Fla. 1st DCA 1980). See also Northwest Orient Airlines v. Gonzalez, 500 So.2d at 702.
When these principles are applied to the medical expense incurred in this case, it is evident that most of the medical bills are compensable. Indeed, the employer and carrier concede as much, excepting only to the costs of treatment rendered by Dr. Platzek and Dr. Blackman. The record reflects, however, that the greater part of Dr. Platzek's contact with claimant was for diagnostic purposes.
In light of the foregoing authorities, we find the deputy commissioner erred in denying the claim for medical benefits, insofar *877 as such claim pertains to emergency medical care, diagnostic testing, and referrals made by an authorized physician for evaluation purposes. Therefore, we reverse the deputy commissioner's outright denial of all medical benefits, and remand with directions to enter an order awarding payment for emergency medical care, diagnostic procedures, and the evaluations performed as a result of authorized referrals. The deputy commissioner may take whatever additional evidence is necessary for a determination of the precise nature of the medical expense involved.
With regard to the second issue, the deputy commissioner found that claimant failed to produce competent, substantial evidence that a work-related precipitating event or repeated exposure caused the symptoms which are the basis of her claim for benefits. In making this finding, the deputy commissioner relied primarily on the testimony of Dr. MacMillan, who conducted an independent medical examination at the request of the employer and carrier. It is well settled that it is the deputy commissioner's function to determine credibility and to resolve conflicts in the evidence, and in the exercise of that responsibility, the deputy may accept the testimony of one physician over that of several others. Curry v. Miami Dolphins, Ltd., 522 So.2d 1010 (Fla. 1st DCA 1988). By the same token, a deputy's resolution of conflicting medical evidence will not be disturbed unless the medical testimony itself fails to meet the test of the substantial evidence rule. Koulias v. Tarpon Marine Ways, 538 So.2d 130 (Fla. 1st DCA 1989); Griffith v. McDonalds, 526 So.2d 1032, 1033 (Fla. 1st DCA 1988). Although in similar circumstances, we might have reached a different conclusion, Dr. MacMillan's testimony is competent, substantial evidence to support the deputy commissioner's findings. Therefore, we will not disturb the deputy's decision with respect to the second issue. See Inn Service Corp., Inc. v. Diaz-Aller, 536 So.2d 307 (Fla. 1st DCA 1988); Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983).
Accordingly, while we do not disturb the deputy commissioner's determination concerning the compensability of the claim, we find the deputy erred in denying payment for emergency medical care and diagnostic examinations and procedures. Therefore, the portion of the order which denies payment of all medical benefits is reversed and remanded for further proceedings in accordance with this opinion.
BOOTH and MINER, JJ., concur.