619 So.2d 380 (1993)
Donaldo MACHACON, Appellant,
v.
VELDA FARMS DAIRY and Crawford and Company, Appellees.
No. 92-652.
District Court of Appeal of Florida, First District.
May 28, 1993.
Rehearing Denied June 30, 1993.
Mark J. Feldman, Miami, for appellant.
Deborah M. Smith, Davis & Wood, P.A., Coral Gables, for appellees.
ZEHMER, Judge.
Donaldo Machacon, Claimant, appeals a workers' compensation order wherein the judge of compensation claims determined that Velda Farms Dairy, Employer, and Crawford and Company, Carrier, were not responsible for paying an unauthorized physician's medical bill. We reverse because the judge erred in finding that the unauthorized medical services at issue were not performed on an emergency basis.
Claimant sustained a compensable injury in August 1991. Employer and Carrier provided medical care through Dr. Geoffrey Coll, who diagnosed a lumbosacral sprain. On October 9, 1991, Dr. Coll stated that Claimant had no evidence of anything other than a soft tissue injury, and released him to work in a regular duty capacity. On that same date, Claimant's attorney wrote to Employer and Carrier expressing Claimant's dissatisfaction with Dr. Coll's care. Claimant returned to Dr. Coll on October 16 complaining of intense pain. Dr. Coll's office report indicates that he found no radicular symptoms, and that he told Claimant to return to work and that he would recheck him at his next regularly *381 scheduled appointment, which was November 13.
On October 18, Employer and Carrier took Claimant's deposition. Claimant testified that he had placed himself under the care of Dr. Ernesto Sivilla, a physician specializing in occupational medicine, and that Dr. Sivilla wanted to order an MRI of his low back. At the deposition, Claimant's attorney hand-delivered to Employer and Carrier a claim for benefits that requested "another orthopedic surgeon to replace Dr. Coll" and an MRI or CT scan of Claimant's low back. Employer and Carrier responded to the claim with an October 18 letter stating that they would be willing to authorize either Dr. Robert Ennis or Dr. Melvin Drucker, both of whom were orthopedists, but that they would not authorize any other physician nor would they pay for diagnostic testing prescribed by another physician. They concluded the letter by instructing Claimant's counsel to advise his client to return to work immediately or prepare job search documentation. Claimant's counsel replied that Dr. Sivilla had scheduled an MRI for Claimant on October 21, that Claimant would hold them responsible for that medical expense and other medical care rendered prior to their providing alternate treatment, and that Employer and Carrier should make an appointment immediately for Claimant with Dr. Drucker. Claimant proceeded with the MRI as scheduled by Dr. Sivilla, and it revealed bulging of several lumbar disks. Claimant saw Dr. Sivilla for follow-up treatment on October 30.
On November 7, Claimant's attorney wrote to Employer and Carrier stating that Claimant still had not heard from them with regard to an appointment with Dr. Drucker, that Claimant had a badly herniated disk but was not receiving any authorized medical care from Employer and Carrier, and that Claimant was continuing to receive medical treatment from Dr. Sivilla. On November 18, Employer and Carrier made an appointment for Claimant to see Dr. Drucker on December 2. Upon receiving notification of the December 2 appointment, Claimant's attorney called Dr. Drucker's office and got an earlier appointment with Dr. Drucker's associate, Dr. Ennis, on November 26.
Employer and Carrier eventually agreed to pay for Claimant's October 17 visit to Dr. Sivilla and the MRI, but they continued to controvert Dr. Sivilla's $100 bill for treatment on October 30. Ultimately, a merits hearing was held solely on Employer and Carrier's liability for this medical bill.
Dr. Sivilla testified at the hearing that he examined Claimant on October 17 and 30, 1991. He initially diagnosed Claimant as suffering from encroachments of the nerve and bulging disks between L-3 and L-5. He felt that an MRI was necessary to determine the damage and proper course of treatment, and he had one performed on October 22. The MRI revealed bulging of the lumbar disks from L-3 to S-1. Dr. Sivilla stated that the MRI was performed on an emergency basis and that Claimant needed it earlier than the date on which it was performed.
Dr. Ennis, the orthopedic surgeon Employer and Carrier authorized as an alternate to Dr. Coll, testified by deposition that his November 26 examination of Claimant revealed neurological changes, abnormalities of sensory evaluation, weakness of muscle strength, significant spasm, and radicular pain. His review of the MRI indicated that Claimant was suffering from bulging disks at 3 levels. He stated that if Claimant had not already had an MRI, he "might very well have ordered one on him when [he] first saw him because [he] would be concerned about the neurological symptoms he exhibited." Dr. Ennis further stated that he had no criticism of Dr. Sivilla's decision to order an MRI in October, and agreed that Claimant could not return to work.
Subsequent to the hearing, the judge entered an order containing the following findings of fact and conclusions of law:
I find as a matter of fact that the Employer/Carrier responded to the claimant's Claim for alternative care dated October 18, 1991 in a timely manner as required by law. The Claimant *382 sought the services of Dr. Ernesto Sivilla without first having sought authorization for Dr. Sivilla's services and did not afford Employer/Carrier sufficient time to offer its choice of alternative care. I find that the Employer/Carrier's response was within the time restrictions set forth in Florida Statute 440.19(e)(7) [sic]. I further find that the MRI which was ordered by Dr. Sivilla was not performed on an emergency basis.
WHEREFORE, it is ordered as follows:
1. That the Employer/Carrier shall have no responsibility to pay the medical bills of Dr. Ernesto Sivilla.
2. Attorney for claimant is not entitled to a fee from the Employer/Carrier for services rendered in connection with the single issue of the payment of Dr. Sivilla's bill.
Claimant appeals this order, arguing that the undisputed evidence in this record shows that Employer and Carrier failed to provide competent medical care in a timely manner, that he was required to obtain emergency care from an unauthorized physician, and that Employer and Carrier are responsible for paying for this treatment. He further contends that the findings of fact in the order are not supported by competent, substantial evidence. We fully agree.
The only medical testimony presented was that of Dr. Sivilla, who testified that the MRI was performed on an emergency basis, and Dr. Ennis, who testified that Dr. Sivilla properly and timely performed the MRI. Employer and Carrier did not present an iota of medical evidence to controvert these facts. There is a complete absence of competent, substantial evidence in this record to support the judge's determination that the MRI was not performed on an emergency basis, so this finding is error as a matter of law. See Siegel v. AT & T Communications, 611 So.2d 1345, 1347 (Fla. 1st DCA 1993). See also Rodriguez v. Sheraton Bal Harbour Hotel, 509 So.2d 369, 370 (Fla. 1st DCA 1987) ("[W]here testimony is uncontradicted, a finding contrary to the weight of that evidence is not supported by competent substantial evidence."); Sanlando v. Utility Corp. v. Morris, 418 So.2d 389, 391 (Fla. 1st DCA 1982) ("In the face of substantial competent evidence, we recognize that factual determinations by a deputy commissioner are normally [footnote omitted] not to be reweighed by an appellate tribunal even though substantial evidence may be marshalled to counter the deputy's determinations. [Citation omitted.] However, this rule evaporates when, as here, there is no competent evidence to support a deputy's conclusions.").
The fact that Dr. Sivilla ordered the MRI on an emergency basis necessarily establishes that Employer and Carrier are liable for Dr. Sivilla's October 30 medical bill. The October 17 visit wherein Dr. Sivilla determined Claimant's need for the MRI, the MRI obtained on October 22, and the October 30 follow-up visit to Dr. Sivilla, were integral elements of the emergency diagnosis and treatment of Claimant's serious condition performed by Dr. Sivilla. Employer and Carrier did not immediately provide an alternate orthopedist who was available to diagnose and treat Claimant when his request was made on October 18; indeed, they did not make any orthopedic services available by an authorized physician until late November. The lack of prior authorization for Dr. Sivilla's medical services does not excuse Employer and Carrier's liability to pay for his course of emergency treatment. Sieracki v. Pizza Hut, 599 So.2d 678, 679 (Fla. 1st DCA 1992); Green v. Chromalloy-Turbocumbustor, 540 So.2d 874, 876 (Fla. 1st DCA 1989). See also Siegel v. AT & T Communications, 611 So.2d 1345, 1349. Indeed, Employer and Carrier's course of conduct in handling this claim is inexcusable under the circumstances and clearly contrary to the self-executing purpose of the Workers' Compensation Act. Their persistent refusal to pay the $100 bill for Dr. Sivilla's follow-up treatment administered prior to their authorization of Drs. Drucker and Ennis (their response to Claimant's October 18 request for another orthopedist indicated only that they would be willing to authorize these physicians) and thereby forcing *383 Claimant to litigate this small claim is patently frivolous.
The order is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ERVIN and WEBSTER, JJ., concur.