465 So.2d 644 (1985)
S AND S STOVE REPAIR, INC., and Travelers Insurance Company, Appellants,
v.
James DUMAS, and the Division of Workers' Compensation, Appellees.
No. AX-489.
District Court of Appeal of Florida, First District.
March 22, 1985.
Rehearing Denied April 12, 1985.
Daniel J. Sullivan of Gladson & Sullivan, Miami, for appellants.
David H. Levine of Levine, Schnepper, Busch & Stein, P.A., Miami; Hershoff & Levy, Miami, for appellees.
MILLS, Judge.
The employer/carrier (E/C) appeal from a workers' compensation order awarding Dumas PPD benefits based on an impairment *645 of 40% of the body as a whole. The E/C contend the deputy erred in finding 100% impairment of claimant's left leg based on the fusion of the ankle. We agree and reverse. Also, the E/C contend the finding of permanent impairment to claimant's left knee is not supported by competent substantial evidence and that the deputy erred in finding a permanent impairment to the body as a whole. We disagree and affirm.
Dumas fractured his left ankle which subsequently required arthroplasty. Later an ankle fusion was required using bone from his tibia. The ankle was fused at 10 degrees of planter flexion.
Several jeers later Dumas suffered an intertrochanteric fracture of the left femur about three inches below the hip joint. Shortly thereafter, he fractured his left tibia at the site where the bone was re moved for the ankle fusion.
At the hearing, the E/C presented the testimony of Dr. Richards, the orthopedic surgeon who performed the ankle fusion on Dumas, as well as medical reports from a Dr. Gregory, an orthopedic surgeon who examined claimant on 27 January 1982.
Dr. Richards estimated Dumas' permanent physical impairment as 58% of the left lower extremity. Using the 1977 AMA Guides at page 31, he gave 40% for joint anklyosed at 10 degrees of planter flexion and added 10% for a 10-degree loss of inversion and eversion.
Dr. Gregory's report stated that claimant's ankle is fused at approximately 10 degrees of planter flexion. This fusion together with the left hip joint limitation constitutes a 50% impairment of function of his left lower extremity according to the AMA tables. Under state law, this would probably convert to a 50% permanent, partial impairment of the left leg.
Dr. Gilbert, claimant's expert, saw Dumas on 6 August 1982. In his deposition, he testified that because claimant had his ankle fused so that no motion at all was possible, he had a 100% disability of his left leg (30% for each of the four lost ranges of ankle motion, equaling 120%, but 100% is the maximum assignable disability). He testified that the left knee was anklyosed at 40 degrees of extension for a 27% impairment of the leg, and that the hip injury equaled 20% of the leg. He combined these ratings using AMA tables, to arrive at a permanent, partial impairment of 40% of the whole man.
Because of the discrepancy between the disability rating assigned by Drs. Richards and Gregory and that stated by Dr. Gilbert, the deputy allowed a supplemental hearing on 15 March 1983 so that Gilbert could clarify the method by which he arrived at his rating. With regard to the ankle injury, Dr. Gilbert stated that tables at pages 31 and 32 of the 1977 Guides allowed 30% for each of four lost ranges of motion (flexion, extension, inversion and eversion) which he had awarded. He stated that if only two ranges had been involved, he would have chosen the highest percentages, but because all four were involved addition of the percentages was required. Concerning the knee, the doctor stated that the rating for the knee should have been based on loss of motion, not anklyosis, but that it was still 27% of the leg, based on a 40% loss of extension. The hip joint's various losses of motion totaled 20%. The doctor then used conversion tables to convert these leg ratings to the impairment of the body as a whole, and arrived at 40% of the body. This conversion was made, according to the doctor because "most people want it into a body rating... . You can use either way you want." The doctor went on to testify that the hip injury was to the body and not just the leg "because the muscles attached to the trochanter are those attached to the pelvis itself and they are in the body on the pelvis... ."
The deputy issued her order recognizing that the primary issue was whether the claimant's injuries constituted a disability to the body as a whole or was limited to the leg. She resolved it by finding that the claimant has been left with a 40% permanent partial disability or impairment of the body as a whole on an anatomic basis. She specifically accepted Dr. Gilbert's opinion *646 as more consistent with logic and reason and her own determinations that the claimant's intertrochanteric fracture and the pain resulting therefrom extends to the hip joint or trunk of the body and thus constitutes an impairment of the body as a whole.
Dr. Gilbert's finding that claimant suffered a 100% impairment of his lower extremity because of his ankle injury is erroneous. The testimony adduced at the hearing and the supplemental hearing clearly establish that claimant's ankle was fused (anklyosed) at 10 degrees of planter flexion, equaling 40% impairment of the lower extremity. 1977 AMA Guides, Table 36, page 31. Dr. Gilbert testified that, with regard to inversion/aversion, the ankle was fused at the neutral position, equaling 30% impairment of the lower extremity. Guides, Table 37, page 32 (Ex. 3).
He calculated the percentage of impairment of the ankle by adding 30% for each lost range of motion (dorsi and planter flexion, and inversion/aversion  see Tables 36 and 37) to reach the maximum disability allowed of 100%. However, on page 32, the guides indicate that such addition only occurs when one is calculating lost ranges of motion, not anklyosis. In the latter case, one takes the largest anklyosis impairment value and that becomes the impairment of the lower extremity  40% for 10 degrees planter flexion as against 30% for fusion at the neutral position with regards to inversion/aversion means that 40 degrees permanent impairment of lower extremity is the correct value.
Therefore, Dr. Gilbert misapplied the Guides in determining the percentage of permanent impairment caused by claimant's ankle injury. 100% is incorrect. 40% of the lower extremity is the correct figure.
Drs. Richards and Gregory stated that no range of motion difficulties were observed while examining claimant. Dr. Gilbert testified to the presence of a 40 degree loss of extension in the knee equaling permanent impairment of the leg of 27%. Guides, Table 38, page 33. He explained the other physicians' findings by stating that if claimant had been on some muscle-relaxing drugs, the impairment might not have shown up on examination.
It is well established that in the determination of claims for workers' compensation, it is the deputy's function to determine credibility and resolve conflicts in the evidence and that he may accept the testimony of one physician over that of several others. Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865 (Fla. 1st DCA 1980). Accord Reynolds v. Neisner Bros., Inc. 436 So.2d 1070, (Fla. 1st DCA 1983). The acceptance and rejection of medical testimony rests with the deputy and his discretion should not be disturbed unless the medical testimony itself fails to meet the rest of the substantial evidence rule. Mobley v. Jack & Son Plumbing, 170 So.2d 41, 44 (Fla. 1964). Here, the findings of the physician adopted by the deputy comply with the guides and hence are supported by competent substantial evidence.
The deputy awarded PPD benefits to claimant under Section 440.15(3)(u), Florida Statutes (1977). This subsection of the statute allows payment of benefits for the percentage of disability suffered by a claimant multiplied by 350 weeks (350 X.40(40%) = 140 weeks). Under the case law in effect at that time, an award of PPD under subsection (3)(u) was permissible only when a scheduled injury produced a disability or incapacity in a nonscheduled portion of the body. Roberts v. Georgia-Pacific Corporation, 394 So.2d 1093 (Fla. 1st DCA 1981).
This principle was first stated in Kashin v. Food Fair, Inc., 97 So.2d 609 (Fla. 1957), where a claimant whose hand was amputated sought PPD under Section 440.15(3)(u) based on impairment of the body as a whole because of shoulder pains suffered as a result of the injury. The E/C argued that the injury was a scheduled one under Section 440.15(3)(c) (loss of a hand) and that benefits had to be awarded pursuant thereto. The court recognized the importance of this distinction based on the difference of time over which compensation *647 is to be paid. The Kashin court rejected the E/C's argument, based on the pain in claimant's shoulder caused by the hand amputation and stated:
When as the result of a scheduled injury a claimant suffers a loss of efficiency or pain in some other part of his body not included in the specific schedule ... then the disability or incapacity produced by the condition in such other part of the body cannot be said to be within the ambit of a scheduled injury.
Subsequent cases have adhered to this decision, rejecting departures from the schedule only when there was no competent substantial evidence of any permanent injury to any unscheduled part of the body. See Taylor v. International Paper Co., 404 So.2d 808 (Fla. 1st DCA 1981); Florida Rock Industries, Inc. v. Beach, 409 So.2d 1160 (Fla. 1st DCA 1982). In the instant case, Dr. Gilbert testified, and the deputy agreed, that the injury to claimant involving the intertrochanteric fracture permanently affected the body as a whole by way of the muscular connection between the leg and the torso. Again, neither of the other two physicians testified that the injuries affected claimant's body as a whole, but because there is competent substantial evidence to support the deputy's finding on this point, we affirm.
Although we affirm the conversion of claimant's injury from a scheduled injury under Section 440.15(3)(b)(loss of a leg) to an injury on the body as a whole under Section 440.15(3)(u), Dr. Gilbert's error as to the percentage of disability contributed by the ankle requires adjustment of the percentage of the body as a whole to which permanent impairment should have been found.
At page 38 of the 1977 Guides is a chart providing the method for calculating the percentage of impairment of the lower extremity when more than one unit (foot, ankle, knee or hip) is involved. Here, three units are involved: ankle, knee and hip. Dr. Gilbert found that the ankle alone caused 100% impairment of claimant's lower extremity. Table 43, page 39, converts this percentage to 40% of the whole man. However, the ankle injury should have resulted in a rating of 40% of the lower extremity, the knee receiving a 27% rating and the hip 20%.
To arrive at a percentage of the leg from these figures, one must utilize the combined values chart appearing at page 158. The percentage is computed by combining 40% with 27% to achieve a figure of 56%; 56% is then combined with 20% to arrive at a figure of 66% which is the disability of the lower extremity. Using Table 43 at page 39, this converts to 26% permanent impairment of the whole man.
Therefore, although we affirm the conversion of the leg injury to the body as a whole based on the causation of pain in claimant's torso as testified to by Dr. Gilbert, we reverse as to the percentage of impairment found and require the deputy to enter an award reflecting a 26% permanent impairment of the body as a whole rather than the 40% erroneously found.
Affirmed in part and reversed and remanded in part.
JOANOS and BARFIELD, JJ., concur.