522 So.2d 1010 (1988)
Emory CURRY, Appellant,
v.
MIAMI DOLPHINS, LTD., INA/Aetna, and Division of Workers' Compensation, Appellees.
No. BR-5.
District Court of Appeal of Florida, First District.
March 30, 1988.
Rehearing Denied April 28, 1988.
Howard L. Silverstein, Miami, for appellant.
Karen M. Gilmartin of Adams, Kelley & Kronenberg, Miami, for appellees.
NIMMONS, Judge.
Claimant appeals from an order denying his claim for wage-loss benefits. We affirm.
Claimant, while working as a custodian at the Orange Bowl Stadium on November 14, 1983, sustained a compensable industrial accident when he slipped on some grease and fell to the floor. Claimant sustained injuries to his head and lower back as well as a hearing loss in his right ear and a loss of his sense of smell and taste. Temporary total disability benefits were paid from November 15, 1983 to March 17, 1984, and wage-loss benefits were paid from March 19, 1984 to June 30, 1984.
Appellant subsequently filed a claim for wage-loss benefits for the period of May through October 1986. In the appealed order, the deputy commissioner denied appellant's claim for wage-loss benefits based upon his findings that the claimant (1) had no permanent physical impairment and (2) had failed to conduct an adequate job search.
In support of his finding of no permanent impairment, the deputy relied solely on the testimony of Dr. Wayne Tobin, an *1011 examining physician. Dr. Tobin, a neurologist, saw the claimant in January, February and March of 1986. Dr. Tobin found no objective evidence to support either a neurological injury or the claimant's complaints of dizziness, back pain and loss of sense of smell and taste. Dr. Tobin opined that the claimant would not be left with a permanent physical impairment and would not be restricted in any way.
Three other physicians, however, testified that claimant would in fact be left with a permanent impairment and these physicians imposed medical restrictions. Dr. Fields, an ear, nose and throat specialist, testified that he saw the claimant once in August 1986. Dr. Fields conducted a hearing test which indicated that the claimant had a hearing loss in the high frequency range. The doctor was not able to rule out a relationship between the hearing loss and the industrial injury. Dr. Fields opined that the claimant was unrestricted, except that the claimant would experience problems with dizziness if he were forced to turn his head around too quickly. It was Dr. Fields' opinion that maximum medical improvement was achieved sometime before he saw claimant and that claimant would be left with a 1% impairment of the whole man strictly for the hearing loss.
Dr. Victor Barredo, an unauthorized neurologist, saw the claimant on five separate occasions between February and October 1986. Dr. Barredo testified that the claimant would be left with an 8 to 10% impairment of the whole man based on the A.M.A. Guides due to the claimant's vertigo problem as well as the loss of his sense of smell and taste. Dr. Barredo restricted the claimant from working as a driver, working around high places or heavy machinery, or working eight hours per day in sunlight or around noise. Claimant was also restricted from lifting above twenty-five pounds. Dr. Barredo indicated that the claimant would not be precluded from returning to his original employment as a custodian, provided it did not involve a lot of heavy lifting.
Dr. Steven Kobetz, claimant's treating physician, also a neurologist, first saw the claimant on November 28, 1983, and last saw him on November 14, 1985. Dr. Kobetz opined that maximum medical improvement was attained on July 9, 1984, with a 5% whole man impairment under the A.M.A. Guides. He restricted the claimant from engaging in any occupation which would require him to do a lot of turning or climbing. Dr. Kobetz, like Dr. Barredo, also restricted claimant from being employed as a driver. Such activities, according to Dr. Kobetz, could precipitate episodes of vertigo.
Appellant maintains that the deputy erred in accepting the testimony of Dr. Tobin over the testimony of the other physicians without setting forth in his order his reasons for doing so. We find that, under the facts of this case, appellant's argument has merit.
It is well established that in the determination of claims for workers' compensation, it is the deputy's function to determine credibility and resolve conflicts in the evidence, and he may accept the testimony of one physician over that of several others. Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865 (Fla. 1st DCA 1980) and S and S Stove Repair, Inc. v. Dumas, 465 So.2d 644 (Fla. 1st DCA 1985). Moreover, a deputy generally need not explain when he accepts the testimony of one doctor and rejects the testimony of another. Buro v. Dino's Southland Meats, 354 So.2d 874 (Fla. 1978). Nevertheless, a deputy's discretion in this area is not unbridled. A deputy is still responsible for making "such findings of ultimate material fact upon which he relies, as are sufficient justification to show the basis of an award or a denial of the claim." Pierce v. Piper Aircraft Corporation, 279 So.2d 281 (Fla. 1973); see also Vargas v. Americana of Bal Harbour, 345 So.2d 1052 (Fla. 1976). This responsibility is thwarted when the order is "so deficient as to impede review when measured against the record facts." Glades County Sugar Growers v. Gonzales, 388 So.2d 333 (Fla. 1st DCA 1980). It has therefore been established that the failure to state reasons for accepting one doctor's opinion over others is error where (1) the reason for the finding in the order is *1012 not apparent from the record, or (2) it appears that the deputy commissioner has overlooked or ignored evidence in the record. Allied Parcel Delivery v. Dixon, 466 So.2d 439 (Fla. 1st DCA 1985); Nicholson v. Sammons Enterprises, Inc., 457 So.2d 513 (Fla. 1st DCA 1984); Poorman v. Munsey & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983); and Rouse v. Wildwood Tropical Nursery, 392 So.2d 370 (Fla. 1st DCA 1981).
Under the facts of this case, it was necessary for the deputy to explain in his order why he accepted the testimony of Dr. Tobin over the testimony of the other three physicians. While it is apparent from the deputy's final order that he did not overlook or ignore the testimony of the other three physicians, it is not apparent from the record why the deputy accepted Dr. Tobin's testimony over the testimony of the other doctors. There is no indication that Dr. Tobin was more qualified than the other physicians. Moreover, Drs. Barredo and Kobetz, also neurologists, had a longer history of examining the claimant than Dr. Tobin. Dr. Barredo examined claimant on five occasions in 1986. Dr. Kobetz, claimant's treating physician, examined and treated claimant on at least thirteen occasions between September 1983 and November 1985. Dr. Tobin only saw claimant on three occasions in 1986.
The order is therefore deficient in failing to articulate the deputy's reasons for accepting Dr. Tobin's opinion over the other physicians' opinions. If the deputy's denial of wage loss were based solely upon Dr. Tobin's opinion of no permanent impairment, we would reverse and remand. However, the deputy's denial of the claim because of the claimant's failure to conduct an adequate work search is supported by competent substantial evidence. The job search forms that had been filed by the claimant merely consisted of copies of newspaper clippings. Although claimant testified that he remembered that he visited some of the places listed in the clippings, he could not recall which ones or when he visited them. Accordingly, the final order denying appellant's claim for wage-loss benefits is
AFFIRMED.
WENTWORTH and ZEHMER, JJ., concur.