578 So.2d 439 (1991)
SKIP'S SHOES AND WESTERN BOOTS and Traveler's Ins. Co., Appellants,
v.
Donald GREEN, and Inland Materials and Erc, Appellees.
No. 90-1596.
District Court of Appeal of Florida, First District.
April 18, 1991.
Margaret E. Sojourner of Frank & Brightman, Orlando, for appellants.
William G. Berzak, Orlando, and Bill McCabe, Longwood, for appellee Green.
Thomas T. Clifford and John P. Daly of Rissman, Weisbert, Barrett & Hurt, P.A., Orlando, for appellees Inland Materials and ERC.
JOANOS, Judge.
Skip's Shoes and Western Boots and Traveler's Insurance Company have appealed from an order of the judge of compensation claims. The order held that any claim by Donald Green against appellees Inland Materials and ERC was barred by the statute of limitations, and that Skip's claim for reimbursement from Inland was therefore also time-barred. As a result, Skip's was found entirely responsible for the compensation and medical benefits also awarded by the order, which awards are not at issue herein. We reverse on the statute of limitations holding, and therefore do not reach appellants' arguments on other points.
Green was employed by Inland in January 1985, when he suffered a compensable injury to the anterior cruciate ligament of his right knee. Dr. Schaeffer was Green's *440 authorized physician. After operating on the knee, he released Green to work on February 18, 1985. No compensation benefits were paid by Inland/ERC after February 21, 1985, but Dr. Schaeffer was never de-authorized. Green returned to work for Inland, but quit in February 1986 because the work was too hard on his knee. He thereafter went to work for Skip's.
During 1986, Green consulted Dr. Schaeffer in July, October and December for problems with his right knee. In October 1987, Dr. Schaeffer was authorized by Skip's/Traveler's to treat Green when he suffered a compensable injury to the lateral meniscus of his right knee. Finally, on April 13, 1988, Green injured the medial meniscus in that knee when it "locked up" while he was descending some stairs at home. Dr. Schaeffer operated in June 1988, when he discovered that complete reconstruction of the anterior cruciate ligament, originally injured in January 1985, had become necessary.
Skip's/Traveler's provided all medical care, as well as compensation benefits, after the October 1987 injury. Section 440.42(3), Florida Statutes, provides that
[w]hen there is any controversy as to which of two or more carriers is liable for the discharge of the obligations and duties of one or more employers with respect to a claim for compensation, remedial treatment, or other benefits under this chapter, . .. and if one of the carriers voluntarily ... makes payments in discharge of such liability and it is finally determined that another carrier is liable for all or any part of such obligations and duties with respect to such claim, the carrier which has made payments ... voluntarily ... shall be entitled to reimbursement from the carrier finally determined liable... .
On March 29, 1989, Skip's/Traveler's filed a notice of controversy between carriers as to Inland/ERC pursuant to this provision, based on the original January 1985 injury. Inland/ERC moved to dismiss the reimbursement claim, and any claims by Green, alleging that "more than two years has elapsed since [Inland/ERC] ... paid or provided any indemnity or medical benefits to the claimant [on February 21, 1985]." See § 440.19(1), Florida Statutes (the right to compensation for disability, rehabilitation, impairment, or wage loss shall be barred unless a claim therefore is filed within 2 years of the time of injury or within 2 years after the date of the last payment of compensation or after the date of the last remedial treatment furnished by the employer).
Green's claim for benefits against Skip's/Traveler's, the reimbursement claim, and Inland/ERC's motion to dismiss were heard at the same time. As to the motion to dismiss, Skip's/Traveler's argued that Green's 1986 visits to Dr. Schaeffer, whom Inland/ERC had never de-authorized, constituted "remedial treatment furnished by" Inland/ERC. Therefore, the statute of limitations should be calculated, not from February 1985, but from the last visit in December 1986. Skip's/Traveler's relied for this argument on McNeilly v. Farm Stores, Inc., 553 So.2d 1279 (Fla. 1st DCA 1989). McNeilly held that visits to a previously authorized, and never de-authorized, doctor during the two-year limitations period constitute "remedial attention furnished by the employer," where visits for continuing supervision and evaluation are reasonably necessary from a medical standpoint.
The evidence received on the "remedial attention" issue included two depositions of Dr. Schaeffer, taken in August 1988 and November 1989. In the first deposition, Schaeffer testified that none of Green's 1986 visits were "due to the original injury." In the second deposition, however, Schaeffer indicated that the January 1985 injury was "very significant," and left Green's knee prone to further insult and injury, specifically to giving way and locking. The judge relied on the first deposition to find that, as to Inland/ERC, the statute of limitations ran from the last payment of compensation on February 21, 1985, and that no other related activity occurred until Skip's March 1989 notice of controversy. The judge therefore concluded that, because Green was barred by the statute of limitations from making any *441 claim against Inland/ERC, Skip's/Traveler's was barred from its reimbursement claim.
The vantage point of a reviewing court is not inferior to that of a judge of compensation claims in interpreting deposition evidence. Metropolitan Transit Authority v. Bradshaw, 478 So.2d 115, 116-17 (Fla. 1st DCA 1985); McCabe v. Bechtel Power Corp., 510 So.2d 1056, 1059 (Fla. 1st DCA 1987); Lerman v. Broward County Bd. of Co. Comm'rs., 555 So.2d 419, 423 (Fla. 1st DCA 1989); Severini v. Pan American Beauty School, Inc., 557 So.2d 896, 897 (Fla. 1st DCA 1990). We acknowledge that Dr. Schaeffer's statement in his August 1988 deposition would, if taken in isolation, support the judge's finding that none of Green's 1986 visits were related to the 1985 injury.
However, Dr. Schaeffer specifically testified in November 1989 that the January 1985 injury to Green's knee was "very significant," and left the knee prone to further insults and injury including giving way and locking. When the 1986 visits are examined in light of this information, a clear relationship to the January 1985 injury is shown. The July visit followed an undescribed incident in Green's home swimming pool. However, Schaeffer's office notes indicate that he found a connection between the complaint and the previous injury. Specifically, he noted Green's failure to perform previously prescribed knee exercises and instructed him to go "back" to doing them. In October, Green told Schaeffer that the knee had "locked up," the very occurrence to which the January 1985 injury had rendered him vulnerable. Finally, the December 1986 problem followed an incident at work.
Considering this evidence, together with Green's uncontradicted testimony that the knee was not "100%" when he returned to work for Inland/ERC in February 1985 and that he left in February 1986 because of knee trouble, we conclude that the 1986 visits to Dr. Schaeffer were related to the January 1985 injury. We therefore find that, under McNeilly, the last remedial attention afforded Green by Inland/ERC occurred in December 1986. The anterior cruciate ligament was next treated in June 1988, within the two year limitations period which commenced December 1986, and the statute would not have run again as to Inland until June 1990. Therefore, the limitations period had not run as to Green when Skip's/Traveler's filed its reimbursement claim in March 1989, and we need not decide the effect on Skip's claim had the statute run as to Green.
Reversed and remanded for further proceedings on the merits of the section 440.42(3) reimbursement claim filed by Skip's/Traveler's.
ERVIN and MINER, JJ., concur.