ZEHMER, Judge.
The claimant appeals and the employer and servicing agent cross-appeal final and amended final workers’ compensation orders that determine the claimant’s entitlement to wage loss benefits and temporary total disability (TTD) benefits. We affirm in part and reverse in part.
I.
Minnie Woods, the claimant, is a licensed practical nurse who was injured in the course of her employment at St. Anthony’s Hospital. During the three years prior to the accident, she worked 7:00 a.m. to 7:00 p.m., two days a week. Although she only worked 24 hours per week, she was paid for 36 hours per week, and at the time of the accident, she was earning $335.88 per week.
The claimant injured her back on November 27, 1988, while assisting a patient from a bed to a chair. Shortly thereafter, she sought medical assistance from Dr. Lyster, an orthopedist. Dr. Lyster diagnosed her injury as an acute lumbosacral strain with acute right trochanteric bursitis. He treated the injury with drugs and physical therapy, and advised the claimant not to return to work until he examined her again. When the claimant did not improve under his conservative treatment, Dr. Lyster referred her to Dr. Thompson, a neurosurgeon. Dr. Thompson diagnosed her injury as a herniated disc and on January 17, 1989, performed a laminectomy. In May 1989, Dr. Thompson stated that the claimant had a 15% permanent impairment and that, as of June 1,1989, she could return to *417 light duty work with a 25-pound lifting restriction.
Upon the claimant’s release to light-duty work, the employer offered her a job as a care unit registrar; this was a 5-day/40-hour per week clerical position that paid $282.80 per week. The claimant took this job, with Dr. Thompson’s approval, on June 26, 1989. On July 17, 1989, the claimant contacted Andrea Hanson, the employer’s workers’ compensation liaison, and advised her that the prolonged sitting required of the registrar job caused her to suffer low back pain. Ms. Hanson instructed the claimant to use a lumbar roll while sitting at work. The claimant continued with this job for another month, at which time she wrote to Ms. Hanson and stated that she was “going crazy doing insurance all the time and in a close [sic] room without window. And the sitting & standing is driving me crazy.” Ms. Hanson noted at the bottom of the claimant’s letter that she had spoken with the claimant, that the claimant did not like the clerical aspect of her job and wanted to go back to patient care, and that the claimant, was aware of the restrictions placed on her by Dr. Thompson. The employer did not offer the claimant any alternative job. On October 10, 1989, the claimant resigned from her job as care unit registrar.
The claimant testified that after resigning from her job with the employer, she began looking for work as a medication nurse because she felt that type of LPN job would be within her restrictions. She stated that some of those jobs required that the nurses push carts, and she realized she could not do that. One potential employer told her she was qualified but wouldn’t hire her because she was “high-risk.” She also looked for cashier positions, but was told that she did not have the experience. All of the claimant’s prior work experience was in the medical field.
The claimant continued to have low back problems and in October 1989 started a physical therapy program at the employer hospital. On December 16, 1989, the claimant began receiving authorized treatment from Dr. West, an orthopedic surgeon. Dr. West recommended a course of extensive physical therapy and indicated that the claimant would be temporarily totally disabled while participating in the program. The claimant began the program on January 22, 1990, and completed it on March 19, 1990. At that time, Dr. West released the claimant to return to work with restrictions that she not lift over 20 pounds and not participate in activities that require twisting and bending. He testified that he felt she had achieved maximum medical improvement as of that time and that he agreed with the permanency rating set by Dr. Thompson. Dr. West testified that he did not feel the claimant was physically capable of returning to a LPN position because of the physical activity involved.
The claimant’s claim for temporary total disability benefits, wage loss benefits, and rehabilitation was controverted and on June 21, 1990, a merits hearing was held. The judge of compensation claims (judge) subsequently entered an order and an amended order, finding that the job as a care unit registrar was within the claimant’s physical restrictions, and that there was no medical evidence to support the claimant’s failure to work until January 22, 1990, when she entered Dr. West’s physical therapy program. He found no evidence of a need for rehabilitation. He ordered the employer and servicing agent to pay the claimant wage loss benefits on the basis of actual and/or deemed earnings in the amount of $282.20 per week for the period of June 1, 1989, to October 10, 1989 and to pay TTD benefits for the period from January 22,1990, to March 19,1990. He denied the claimant’s claim for wage loss benefits for the period of time between March 20, 1990, through May 31, 1990. Both parties appeal these orders.
II.
On this appeal, the claimant first asserts that the judge erred in failing to either award or deny her claim for TTD benefits for the period of December 4 through 24, 1988. She argues that although she was not released to return to work from the time she went to the emergency room on *418 December 4, 1988, until after she had surgery in January 1989, the employer refused to pay her workers’ compensation benefits for this period and instead required her to use her accrued “free time,” or “vacation.” The claimant argues that she was entitled to full workers’ compensation benefits during this period. The employer and servicing agent urge us to affirm this issue, even though the judge failed to make a determination on the claim. They acknowledge that the claimant used her “free time” from December 4 through 24, 1988, but state that she was not entitled to benefits during this period because she did not present evidence that she could have used this time subsequent to January 1, 1989. They argue that because the claimant may have been compelled to use her paid vacation time by the end of the year, or lose it without pay, she was not prejudiced by their failure to pay her benefits during this period. Citing Miami Dade Water & Sewer Authority v. Leech, 447 So.2d 979 (Fla. 1st DCA 1984), as pertinent authority, they assert the principle that TTD benefits are not due for periods when the employer pays the claimant’s salary.
In addressing this issue, we first observe that although the claim for benefits does not contain a request for TTD benefits during this period, the record shows that the claimant clearly raised this issue both at pretrial and at the merits hearing, and that the judge acknowledged the claim at the merits hearing. Since this claim was validly before the judge for determination, the final order was required to reflect, at a minimum, that the judge was aware of the claim and rejected it. McMeans v. F.E. Booker, 507 So.2d 135 (Fla. 1st DCA 1987). Thus, we remand with directions that the judge consider and rule upon this issue.
Although we remand for the purpose of giving the judge the opportunity to rule on this issue, having already fully reviewed the record as it pertains to this issue, we are constrained to point out that we see no basis in the record on appeal for denying TTD benefits to the claimant during this period. The claimant’s testimony was uncontroverted that she was not released to return to work from the time she went to the emergency room on December 4, 1988, until the time she had surgery on January 17, 1989. Furthermore, Dr. Ly-ster’s report shows that on December 16, 1988, when he first examined the claimant, he stated that he planned to “keep her out of work until I see her back again next week.” Our review of the record revealed no evidence that would support a finding that the claimant was not temporarily totally disabled during this period.
We also find no merit in the employer and servicing agent’s argument that even if the claimant was TTD during this period, they were entitled to offset her benefits by the amount of vacation benefits paid to the claimant during this period. Had the employer and servicing agent intended to rely on this defense, they would have had the burden of asserting it at the merits hearing and proving entitlement to such an offset. Grieco v. Lehigh Corporation, 549 So.2d 748 (Fla. 1st DCA 1989). They first argue their entitlement to offset on this appeal, but point to nothing in the record that shows they satisfied either of their burdens at the merits hearing. Our review of the record reveals that the only evidence presented with regard to the employer’s payment of vacation benefits to the claimant during this period was the claimant’s presentation of her pay stub for this period, which shows that she was paid for “free time” in the gross amount of $399.84. Her uncontroverted testimony was that the pay she received for this period represented accumulated vacation time for which she could have received a refund if unused. Thus, even if this issue had been properly raised by the employer and servicing agent at the merits hearing, the only evidence submitted on the issue would support a finding that the employer and servicing agent were not entitled to an offset. An employer has no right to refuse to pay a claimant vacation benefits it was contractually obligated to pay by refusing to reimburse the claimant vacation time the claimant was required to expend in lieu of workers’ compensation benefits the claim *419 ant was entitled to receive. See Marion Correctional Institution, Florida Department of Corrections v. Kriegel, 522 So.2d 45 (Fla. 5th DCA 1988). The employer and servicing agent’s argument that the claimant was not entitled to TTD benefits during this period because she received vacation benefits is legally invalid
III.
The claimant next argues that the judge erred in denying her claim for wage loss benefits during periods where she performed a job search, because he made no findings that she voluntarily limited her income or that her work search was not made in good faith. In the initial final order, the judge awarded the claimant TTD benefits for the period from October 10, 1989, to March 19, 1990. In the amended final order, the judge amended that award to read, “That the employer/carrier pay the employee temporary total disability benefits for the period of time from January 22, 1990, to March 19, 1990_” The amended final order did not address the period of time deleted from the award in the initial final order, which was the period from October 10, 1989, through January 21, 1990. The claimant argues that the judge erred in failing to address this period and should have awarded her wage loss benefits for this period. The amended final order expressly denied the claimant’s claim for wage loss benefits for the period of time from March 20,1990, to May 31,1990. The claimant also argues that the denial of wage loss benefits for this period was error.
The record shows that the claim for wage loss benefits for the period of October 10, 1989, through January 21, 1990, was validly before the judge for determination. Thus, for the reasons stated in our discussion of the claimant’s first issue, we must remand for a determination on that claim.
We reverse the judge’s denial of wage loss benefits from March 20 through May 31, 1990. While the judge found that the clerical job the claimant rejected was within her physical limitations, he did not make a finding that it was suitable employment for the claimant, or that her rejection of that job constituted a voluntary limitation of income.[1] Even if the order, as amended, contained such findings, however, the record does not contain competent, substantial evidence that would support them. The claimant’s education and experience is in her chosen field of nursing. She testified that she has been a licensed practical nurse since 1979. Prior to that, she worked for approximately 5 years as a nurse’s aide. The only other job she has had was working as a “coffee girl” in a cafeteria. Thus, virtually all of the claimant’s job experience is in the field of nursing. Nothing in the record suggests that she is suited to doing clerical work or that she has ever had the desire to do clerical work. Furthermore, her nursing job entailed working two 12-hour shifts per week. The care unit registrar job entailed working five 8-hour days per week. While the record supports the judge’s finding that the claimant is physically capable of performing the care unit registrar job, such evidence is not sufficient to support a finding that the claimant voluntarily limited her income by rejecting a job that required her to work an additional 16 hours per week in a windowless room filling out insurance forms, or that such a job was “suitable employment.” As this court stated in Viking Sprinkler v. Thomas, 413 So.2d 816 (Fla. 1st DCA 1982), an employer and carrier do not have the right to choose a claimant’s post-injury occupation when an industrial accident has impaired the claimant’s own freedom of choice and job performance ability. Many factors are to be considered in determining whether a job is suitable, “not the least of which are the employee’s aptitude, interest, desire, or ‘motivation’ to engage in a certain type of work.” 413 So.2d at 818. See also New Wales Chemicals, Inc. v. Parks, 518 So.2d *420 360 (Fla. 1st DCA 1987) (Where the claimant’s primary lifetime vocation had been that of a heavy equipment operator and diesel mechanic, rehabilitation benefits could not be denied because of the claimant’s refusal to continue working for the employer in post-injury employment as a security guard because such job was not “suitable employment.”) The parties stipulated that the claimant suffered a permanent impairment as a result of the industrial accident, and the judge found that the claimant reached MMI on June 1, 1989. The claimant testified that she conducted a good faith work search. Absent a finding based on competent, substantial evidence that the claimant’s job search was not made in good faith, the judge was constrained to award the claimant wage loss benefits for the periods at issue.
IV.
On cross-appeal, the employer and servicing agent cite Curry v. Miami Dolphins, Ltd., 522 So.2d 1010 (Fla. 1st DCA 1988), in support of their argument that the award of TTD benefits from January 22, 1990, through March 19, 1990, was error because the order did not reflect that the judge considered the medical opinion of the operating neurosurgeon, Dr. Thompson, which was to the effect that the claimant was physically capable of performing light duty work during this period. Curry states that a judge’s failure to state reasons for accepting the testimony of one doctor over that of another is error where the reason for the finding is not apparent from the record or where it appears that the judge has overlooked or ignored evidence in the record. 522 So.2d at 1011-1012. Here, the reason for the judge’s finding that the claimant was TTD during this period is apparent from the record. Dr. West testified that the physical therapy program he prescribed for the claimant during this period required her to participate in exercises every two or three hours and that this would require her to remain off work for the few weeks of the program. For this reason, he opined that she had a temporary period of total disability while participating in the program. Clearly, the claimant could not be expected to work 8 hours per day, 5 days per week, while participating in an exercise program that was not on the employer’s premises[2] and required her to perform certain exercises every two to three hours. This award is based on competent, substantial evidence, so we affirm the cross-appeal.
The award of TTD benefits from January 22 through March 19, 1990, is AFFIRMED, the denial of wage loss benefits for the period of March 20 through May 31, 1990, is REVERSED, and the cause is REMANDED for determination of the claims for TTD benefits for the period of December 4 through 24, 1988, and wage loss benefits from October 10, 1989, through January 21, 1990.
BARFIELD and WOLF, JJ., concur.

. The judge found in the initial final order that the job as care unit registrar was suitable employment and that the claimant voluntarily limited her income by failing to accept such job. However, the amended final order deleted the paragraph containing these findings.

. Dr. West testified that he objected to the employer/servicing agent’s attempt to place the claimant in a physical therapy program at the employer hospital because no one in their physical therapy department was qualified in the same manner as the therapist to whom he was sending the claimant. (R. 155).