623 So.2d 529 (1993)
DAYS INN/DAYS SUITES and Continental Loss Adjusting Services, Appellants,
v.
Marie E. THOMAS, Appellee.
No. 92-00461.
District Court of Appeal of Florida, First District.
July 7, 1993.
Rehearing Denied September 28, 1993.
*530 Pamela Craig, Whittaker, Stump, Webster & Miller, P.A., Orlando, for appellants.
Michael B. Murphy, Winter Haven, and Bill McCabe, Longwood, for appellee.
BOOTH, Judge.
This cause is before us on appeal from an order of the judge of compensation claims (JCC). The employer and carrier (E/C) contend, inter alia, that the JCC erred in accepting the testimony of claimant's treating chiropractor and the testimony of a physiatrist[1] over that of two orthopedic physicians.
Claimant Marie E. Thomas is a 37-year-old Haitian woman who does not, with the exception of a few words, speak, read, or write English. On January 20, 1990, she twisted her back while working as a maid at a Days Inn. She came under the care of Dr. Smith, a chiropractor, and Dr. Smith became claimant's primary treating physician. Dr. Smith's diagnoses included lumbar sprain/strain with "lumbar segmental disfunction" and "lumbar neuralgia" and thoracic sprain/strain with "thoracic segmental disfunction." Claimant showed initial progress but did not significantly improve after April 1990. An MRI showed minimal degenerative changes at L3-4, but was essentially normal for a person of claimant's age.
Dr. Smith referred claimant to Dr. Lenhart, a physiatrist. Dr. Lenhart performed, inter alia, a thermogram.[2] Dr. Lenhart read *531 the thermogram findings as consistent with lumbosacral muscle spasm and probable L3-4 nerve fiber irritation.
Drs. Smith and Lenhart believed claimant to be temporarily totally disabled. Dr. Smith imposed "basic low back restrictions... such as no bending, lifting, twisting, or any other activities which may aggravate her symptoms." For more specific restrictions, Dr. Smith recommended an orthopedic functional capacity evaluation. Dr. Lenhart restricted claimant from lifting, pushing, pulling, bending, stooping, or twisting movements. Dr. Smith recommended that Dr. Lenhart be authorized, but the E/C declined to authorize Dr. Lenhart. Dr. Smith believed that in the absence of care from a physiatrist, claimant reached maximum medical improvement on January 3, 1991, with a five-percent permanent partial impairment. Dr. Smith had not, by the time of the merits hearing, released claimant to return to work.
The E/C, on July 30, 1990, referred claimant to Dr. Mahan, an orthopedic physician, for an independent medical examination. The report indicates that during her visit with Dr. Mahan, claimant complained that she experienced pain at all times, whether she was standing, sitting, lying down, walking, or sleeping. Dr. Mahan found no objective basis for claimant's subjective complaints. Claimant's only abnormality was a loss of water content at the L3-4 disc, shown by the MRI, and Dr. Mahan believed this to be a preexisting condition. Dr. Mahan believed that claimant was "either outright lying" or "converting psychological problems into somatic complaints." Dr. Mahan believed that claimant had fully recovered from her sprain and could return to her full work activities without restriction.
The E/C referred claimant to a Dr. Lipinski, another orthopedic physician, on September 5, 1991. Dr. Lipinski testified that the claimant's complaints during the examination were inappropriate. Dr. Lipinski also was unable to correlate claimant's complaints with physical findings. Dr. Lipinski did not believe that further chiropractic treatment was warranted, because "before you treat something, you've got to have some reason to treat it."
Each of the treating or evaluating physicians expressed difficulty communicating with claimant. Dr. Smith commented that he "was able to speak enough French or Creole to try to communicate with claimant on a daily basis." Dr. Lenhart communicated with claimant through an interpreter and had to repeat several tests to obtain accurate results. Drs. Mahan and Lipinski communicated with claimant through an interpreter, whose English was poor. None of the physicians, however, gave any indication that the language barrier affected his ability to diagnose claimant's conditions.
The JCC, however, found as follows:
I find that the two evaluating orthopaedic physicians had difficulty understanding the claimant and could not properly perform meaningful evaluations. I find Dr. Smith was able to meaningfully communicate with the claimant during the examinations and treatment that he provided.
The JCC accepted the opinion of Dr. Smith and found Dr. Lenhart's findings to have confirmed those of Dr. Smith. The JCC rejected the opinions of Drs. Lipinski and Mahan. The JCC awarded TTD benefits from January 20, 1990, the date of injury, through January 3, 1991, the date on which Dr. Smith found claimant reached MMI. From January 3, 1991 forward, claimant was awarded PTD benefits. On appeal, the E/C challenge the TTD award from September 15, 1990, and the PTD award.
A JCC has discretion to determine credibility, resolve conflicts in evidence, and accept the testimony of one physician or physicians over that of others. Yeargin Construction Co. v. Hutchinson, 547 So.2d 1269 (Fla. 1st DCA 1989); S & S Stove Repair, Inc. v. Dumas, 465 So.2d 644 (Fla. 1st DCA 1985). Generally, a JCC need not explain his decision to accept the testimony of one doctor over that of others unless (1) the reason *532 for such decision is not apparent from the face of the record, or (2) it appears that the JCC has overlooked or ignored evidence in the record. H & A Franks Construction, Inc. v. Mendoza, 582 So.2d 780 (Fla. 1st DCA 1991); Curry v. Miami Dolphins, Ltd., 522 So.2d 1010 (Fla. 1st DCA 1988). The reasons given must logically support the JCC's decision. Fritz v. Courtyard by Marriott, 592 So.2d 1167, 1170 (Fla. 1st DCA 1992); Mendoza, supra at 782 n. 2 (reason given must logically support the JCC's decision and find articulable support in the record); Yeargin, supra, at 1271. Finally, since all of the medical evidence in this case was presented by either report or deposition, this court is not in an inferior position to that of the JCC in interpreting such evidence. Mendoza, supra at 781-782; Skip's Shoes and Western Boots v. Green, 578 So.2d 439, 441 (Fla. 1st DCA 1991); McCabe v. Bechtel Power Corporation, 510 So.2d 1056 (Fla. 1st DCA 1987).
The JCC obviously did not overlook or ignore testimony of any of claimant's treating or examining physicians. However, the JCC's reasons for accepting the opinions of Drs. Smith and Lenhart over the opinions of Drs. Mahan and Lipinski are not apparent from the face of the record. The only reason given in the order was that a language barrier prevented Drs. Mahan and Lipinski from properly performing "meaningful evaluations." Careful evaluation of the record, however, has yielded no support for this finding.
Although Drs. Mahan and Lipinski did acknowledge a language barrier and the need for an interpreter, nothing in Dr. Mahan's report or Dr. Lipinski's deposition even remotely indicates that either physician was unable to perform a "meaningful evaluation," and both physicians expressed their findings with confidence. Surprisingly, it was Dr. Lenhart, whose testimony the JCC accepted, who expressed such difficulty communicating with claimant that certain tests had to be repeated.
For the foregoing reasons, the award of TTD benefits from September 15, 1990 through January 3, 1991, is reversed, and the award of PTD benefits is reversed. This cause is remanded to the JCC for proceedings consistent herewith. The JCC in his discretion may require further evidence.
KAHN and MICKLE, JJ., concur.
NOTES
[1] Physiatry is a specialty of physical medicine and rehabilitation which focuses on disabilities such as stroke, paralysis, spinal cord injuries, and the like. Mallon v. Florida Rock Industries, Inc., 568 So.2d 503, 504 n. 1 (Fla. 1st DCA 1990).
[2] Thermography is a technique for detecting and measuring variations in the heat emitted by regions of the body and transforming them into visible signals that can be recorded photographically for the purpose of diagnosing abnormal underlying conditions. Fay v. Mincey, 454 So.2d 587, 590 n. 2 (Fla. 2d DCA 1984). The validity of thermograph as a diagnostic tool is subject to dispute within the medical community. See, e.g., Green v. Chromalloy-Turbocumbustor, 540 So.2d 874 (Fla. 1st DCA 1989); Farmer v. Protective Casualty Insurance Company, 530 So.2d 356 (Fla. 2d DCA 1988); Bradley Construction Company v. White, 457 So.2d 547 (Fla. 1st DCA 1984).