635 So.2d 1039 (1994)
Edward R. STACY, Appellant,
v.
VENICE ISLES MOBILE HOME PARK, USF & G, Appellees.
No. 92-2328.
District Court of Appeal of Florida, First District.
April 27, 1994.
*1040 Alex Lancaster and Rosemary B. Eure, of Lancaster & Eure, P.A., Sarasota, for appellant.
Hermes Eraclides of O'Riorden, Mann, Hootman, Ingram & Dunkle, P.A., Sarasota, for appellees.
JOANOS, Judge.
In this workers' compensation appeal, Edward R. Stacy (claimant) contests the order of the Judge of Compensation Claims (JCC) denying his claim for medical treatment and indemnity benefits. The issues presented are (1) whether the JCC erred in rejecting the testimony of claimant's treating physicians as to causal relationship between the industrial accident and claimant's current physical condition, and (2) whether the JCC erred in rejecting the physicians' opinions without providing a sufficient reason for doing so. We affirm.
The industrial accident at issue in this case occurred July 12, 1991. Claimant was employed by Venice Isles Mobile Home Park (employer) as a member of the grounds crew. Claimant testified that as he assisted in removing a sidewalk, he was scooped up by a tractor bucket, then dropped five feet, landing on his head, neck, and shoulder. An accident report was filed, but claimant declined an offer of medical attention at that time and continued working.
The claimant testified that his entire body was sore the first week after the accident. When the soreness began to fade, he testified that there was numbness and weakness in his hands. On August 2, 1991, for reasons unrelated to the earlier accident, claimant passed out while working in the hot sun with a weed-eater. When he was told he would have to continue operating the weed-eater rather than being assigned to lighter duty, he decided to leave. Claimant said when he got into his automobile and turned around in the driveway, he clipped the door of a company truck that was sitting partially in the driveway. According to a witness, claimant jammed the front end of his car against the truck and accelerated, pushing the truck. The police were called and claimant was issued a ticket for careless driving. Claimant was then informed that his employment would be terminated. Thereafter, claimant sought medical attention. Claimant said he sought medical care on August 3, 1991, the day after the motor vehicle accident, because he was informed his employment would be terminated on Monday when the manager returned. Claimant's only physical complaints at that time were of numbness and tingling in his hands. He stated that he told the attending physician of these symptoms, but the information does not appear on the emergency room report. Claimant said he "was going to rough it out" while he was employed, but knowing he would be fired, he sought medical attention at a hospital emergency room. He said he did not mention the *1041 August 2, 1991, incident to any of the examining or treating physicians, because he considered the incident nothing more than a mishap involving no physical injury. After x-rays were taken at the hospital, claimant was referred to a neurosurgeon.
Claimant consulted an attorney about a possible action for personal injuries. Acting upon the attorney's advice, claimant wrote a letter requesting medical treatment for the industrial injury. The carrier authorized a neurologist, who performed a magnetic resonance imaging test (MRI). Based upon the MRI results, the neurologist referred claimant to Dr. Sonstein, a neurosurgeon, who examined him on October 15, 1991. Following a myelogram performed October 30, 1991, Dr. Sonstein recommended surgery. Although claimant agreed to have the surgery, it was not authorized by the carrier.
The record reflects that the carrier advised claimant of his entitlement to benefits, and provided him with work search forms. In addition, claimant was working with a therapist provided by the carrier. Claimant did not conduct a work search at any time pertinent to this appeal. His testimony reflects that he understood he was not supposed to work pending the recommended surgery, and considered a work search a useless effort, because the rehabilitation provider had scheduled him for tests.
Dr. Sonstein's report and deposition testimony indicates that claimant suffered from significant disc disease at C4-5 and C5-6. In Dr. Sonstein's opinion, claimant's testimony as to hand numbness and weakness was consistent with the cord compression revealed by the MRI. Dr. Sonstein further opined that the injury of July 12, 1991, aggravated a pre-existing degenerative condition in claimant's neck, and claimant was capable of light duty work after the injury. The history claimant furnished to Dr. Sonstein included details of the industrial accident of July 12, 1991, but claimant did not advise him concerning the incident of August 2, 1991. Dr. Sonstein stated that if the motor vehicle accident was very minor it would still be his view that the industrial accident of July 12, 1991, aggravated claimant's pre-existing condition.
Dr. Lonstein, who performed an independent medical examination of claimant on May 1, 1992, related claimant's symptoms to the industrial accident of July 12, 1991. Again, he did not have information as to the motor vehicle accident. When asked whether the motor vehicle accident was the more logical cause of claimant's condition, Dr. Lonstein concluded that it would be the more immediate cause since claimant sought medical attention the next day. When asked to assume, however, that the motor vehicle accident was insignificant and caused no injury to claimant, Dr. Lonstein opined that claimant's complaints would be related to the industrial accident of July 12, 1991. A film introduced into evidence showed the claimant replacing a lugnut on an automobile wheel.
The JCC denied the claim for workers' compensation benefits, based on his determination that claimant was not credible. The JCC found claimant's lack of credibility made the predicate for the doctors' opinions regarding causal relationship "not worthy of belief."
It is undisputed in this case that an industrial accident occurred on July 12, 1991. The controversy is whether claimant's pre-existing condition was aggravated by that accident. The employer/carrier contended the motor vehicle incident of August 2, 1991, was the cause of claimant's symptoms, rather than the July 12, 1991, industrial accident.
The JCC rejected the opinions of the two physicians that the industrial accident aggravated claimant's condition, concluding the predicate for those opinions was not worthy of belief. That determination was based on findings that claimant worked continuously after the industrial accident until August 2, 1991, and only sought medical attention when he left the workplace believing his employment was about to be terminated. The JCC further noted that on August 3, 1991, claimant sought medical treatment at the emergency room, giving a history of the accident of July 12, 1991, but failing to mention the motor vehicle incident of August 2, 1991. The JCC found claimant had been untruthful in the medical history he provided the doctors, to the extent that he did not advise Dr. *1042 Sonstein and Dr. Lonstein of the August 2, 1991, motor vehicle accident. The JCC found claimant's medical condition to be chronic and pre-existing, rejecting the doctors' opinions of aggravation of the pre-existing condition as unfounded.
Clearly, credibility determinations and resolution of conflicting evidence are within the JCC's discretion. Days Inn/Days Suites v. Thomas, 623 So.2d 529 (Fla. 1st DCA 1993); Yeargin Construction Co. v. Hutchinson, 547 So.2d 1269 (Fla. 1st DCA 1989); S & S Stove Repair, Inc. v. Dumas, 465 So.2d 644 (Fla. 1st DCA 1985). The JCC need not explain the acceptance of one physician's opinion over that of another unless (1) the reason is not apparent from the record, or (2) it appears the JCC overlooked or ignored evidence in the record. Days Inn v. Thomas, 623 So.2d at 532; H & A Franks Construction, Inc. v. Mendoza, 582 So.2d 780 (Fla. 1st DCA 1991); Curry v. Miami Dolphins, Ltd., 522 So.2d 1010 (Fla. 1st DCA 1988). The reasons provided by the JCC must be logical and must be supported by articulable facts in the record. Days Inn v. Thomas, 623 So.2d at 532. However, when the question before the JCC involves the determination of a non-observable medical condition beyond the common experience of the trier of fact, it is error to reject unrefuted expert medical testimony without providing a sufficient reason for doing so. Turner v. G. Pierce Wood Memorial Hospital, 600 So.2d 1153, 1156-1157 (Fla. 1st DCA 1992); Thomas v. Salvation Army, 562 So.2d 746, 749 (Fla. 1st DCA 1990); Curtis v. Florida Correctional Institute, 509 So.2d 1192 (Fla. 1st DCA 1987).
Moreover, a claimant bears the initial burden to demonstrate entitlement to temporary disability benefits, either total or partial, upon a change in employment status due to a compensable injury. The burden may be met with evidence that due to physical limitations, the claimant is unable to do light work uninterruptedly, or with evidence of a good faith, albeit unsuccessful, work search. § 440.15(3)(b)2., Fla. Stat. (1991); Publix Supermarket, Inc. v. Hart, 609 So.2d 1342, 1344 (Fla. 1st DCA 1992); Roll v. Sebastian Inlet, 609 So.2d 674, 676 (Fla. 1st DCA 1992).
In this case, the JCC denied the claim in its entirety, finding the expert opinion regarding causal relationship to be unfounded due to claimant's lack of credibility. This credibility determination was based on a number of factors, including claimant's failure to seek medical treatment until some six weeks after the industrial accident, when it appeared he would be dismissed due to a disagreement with a supervisor. The JCC considered claimant's failure to give a history of the automobile incident of August 2, 1991, to any of the examining or treating physicians cast further doubt on his credibility.
We decline to disturb the JCC's determination that claimant's medical condition is due solely to his persistent, chronic, pre-existing condition. Although a different trier of fact may have reached a different conclusion on the basis of the record before this court, where the record contains competent substantial evidence to support the JCC's credibility and factual determinations, this court will not substitute its judgment for that of the JCC. See Ullman v. City of Tampa Parks Department, 625 So.2d 868, 874 (Fla. 1st DCA 1993); Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983).
Accordingly, the compensation order denying medical and indemnity benefits is affirmed in all respects.
WOLF, J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissenting.
Although this court recently stated in Ullman v. City of Tampa Parks Department, 625 So.2d 868 (Fla. 1st DCA 1993), that a fact-finder could correctly reject uncontradicted medical testimony which was "`flawed by reason of the materially untruthful history given by the claimant,'"[1] we nonetheless continued to embrace the rule which recognizes that the causation of non-observable medical injuries is essentially a medical question when the occurrence of an industrial *1043 accident is not at issue. The court observed that "[t]he question of whether ... an accident occurred, as contrasted with the issue of medical causation in the face of the undisputed occurrence of an accident, is not, strictly speaking, a medical question." Id. at 871 (emphasis added). In Ullman, there was a substantial dispute regarding the occurrence of the claimant's accident in that it was uncorroborated by any witness; hence, the court concluded that the judge of compensation claims (JCC) properly rejected unrefuted medical testimony relating the cause of a claimant's injury to his employment. Id. at 873-74.
The facts in the present case are altogether different. The JCC specifically found that claimant had suffered a work-related accident, but rejected his contention that the accident caused his injuries. Thus, unlike Ullman, the only dispute at bar is whether the accident caused the claimed injuries. In ruling that they were noncompensable, the JCC below relied in large part on evidence showing that claimant had been untruthful in the rendition of his medical history to his doctors by not disclosing the later, noncompensable automobile accident of August 2, 1991, and by not seeking medical treatment for the claimed industrial injury of July 12, 1991, until the day following the automobile accident. Although the judge made no explicit finding that it was more likely than not that the later automobile accident was the cause of claimant's complaints,[2] I assume, by reason of his focus upon the claimant's failure to report the later accident to his treating physicians, that the JCC considered claimant's credibility regarding the cause of his injury to be seriously undermined. If so, this conclusion is not, in my judgment, supported by competent, substantial evidence.
Claimant denied that he suffered any injury as a result of the August 2 automobile accident. His testimony was substantially corroborated by an employee who witnessed the accident, who recounted that after starting his car, Stacy intentionally jammed its front end against a nearby truck, resulting in minimal property damage to it. The witness did not say Stacy was injured or that Stacy complained of pain following the accident. Thus, the only testimony of any person at the scene of the automobile accident, other than claimant's, corroborates that of claimant regarding the absence of any injury to him.
It is true that after giving their medical opinions relating claimant's aggravation to the industrial accident, claimant's attending physicians were asked to assume, in a hypothetical question, that claimant had suffered an injury as a result of an automobile accident on the day before he first presented himself for medical attention, and whether, under such circumstances, it was more likely than not that the aggravation of claimant's condition was caused by the second, rather than the first, accident. Upon accepting such facts as correct, both physicians answered in the affirmative. The rule is clear, however, in both civil and workers' compensation cases, that a hypothetical question is improper if any of the basic facts contained in the question are not supported by competent evidence in the record. Monsalvatge & Co. of Miami v. Ryder Leasing, Inc., 151 So.2d 453, 455 (Fla. 3d DCA 1963); Body Works, Inc. v. Chavez, 606 So.2d 1273, 1274 (Fla. 1st DCA 1992). See also Charles W. Ehrhardt, Florida Evidence § 704.2 at 526 (1993 ed.). As the Florida Supreme Court recognized in Geiger Distributors, Inc. v. Snow, 186 So.2d 507, 509 (Fla. 1966), a medical expert's opinion testimony must be "solidly rooted in a firm foundation of fact." In any event, when the same medical experts in the case at bar were later asked to assume that claimant suffered no injury following the automobile accident, they answered that under such circumstances the industrial accident was the more probable cause of claimant's aggravated condition.
It appears to me that the facts in this case are similar to those in Bray v. Electronic Door-Lift, Inc., 558 So.2d 43 (Fla. 1st DCA 1989), and, therefore, the rule stated therein should control the instant case. In Bray, *1044 this court, speaking through Judge Joanos, observed that the occurrence of the accident at work was undisputed and, accordingly, reversed a finding by the JCC that claimant's medical condition was unrelated to his employment. In so determining we stated, "Despite the fact finder's prerogative with regard to credibility determinations, the judge does not have the right to reject the unrefuted medical testimony of a claimant's expert witness, without a reasonable explanation." Id. at 46. In reaching its decision, Bray applied the logical cause doctrine, and thereupon ruled, under the circumstances, that the claimant had established a logical cause for his injuries, and that the employer/carrier (E/C) had not shown a more logical cause by competent, substantial evidence. Id. at 47.
In reaching its decision, this court noted in Bray that one of the reasons the JCC gave for concluding that the claimant did not suffer a compensable accident was that claimant, when first visiting his physician, did not report to him that he had incurred a work-related accident. In reversing the denial of benefits, this court observed that the symptoms[3] were not such that would indicate they might be related to his fall and blow to the head at work, and, therefore, his failure to recount the same earlier to his physician appeared reasonable. In the case at bar, claimant testified that his delay in seeking medical attention for the injuries which he contends were caused by his industrial accident was due to the fact that his primary complaints pertained to numbness and weakness in his hands, which might not readily be related to his fall and blow to the head. Consequently, as in Bray, the reason given by claimant at bar also appears reasonable.
In my judgment, the application of the logical cause doctrine to the case at bar is as appropriate as it was in Bray. Here the occurrence of the accident at work was undisputed, and the medical evidence relating the aggravation of claimant's degenerative disc condition to the work-related accident was also essentially undisputed. Under the circumstances, the burden shifted to the E/C to show a more logical cause for claimant's condition. The E/C pinpoints only the automobile accident of August 2, 1991 as the cause of claimant's aggravated condition; however, the record contains no competent, substantial evidence that claimant suffered a separate injury attributable to that accident. Under the circumstances, the E/C has failed to show a more logical cause for claimant's injury than the industrial accident. I would therefore reverse the denial of the claim for compensation and remand the case for further proceedings consistent with this dissent.
NOTES
[1] Ullman, 625 So.2d at 872 (quoting Easkold v. Rhodes, 614 So.2d 495, 498 (Fla. 1993)).
[2] In his order denying claimant's motion for rehearing, the JCC does state that he finds "the greater weight of the evidence suggests that the employee has other medical problems, other accidents and other conditions which are as likely as not to be the competent producing cause of his disability and need for medical care." (Emphasis added.)
[3] His primary complaints were that his leg was weak and occasionally gave way and dragged.