411 So.2d 927 (1982)
OAK CREST ENTERPRISES, INC. and United States Fidelity & Guaranty Company, Appellants,
v.
Barbara J. FORD, Appellee.
No. AC-490.
District Court of Appeal of Florida, First District.
March 18, 1982.
Rehearing Denied April 13, 1982.
*928 Jack A. Langdon of Jones & Langdon, P.A., Gainesville, for appellants.
Thomas W. Davis of Barton, Cox & Davis, Gainesville, for appellee.
THOMPSON, Judge.
The employer and carrier (E/C) appeal a compensation order awarding wage loss benefits, contending that the deputy commissioner (deputy) erred: (1) in failing to make express findings that claimant had permanent impairment and had reached maximum medical improvement (MMI) on a date certain; and, (2) in finding that claimant had carried her burden of demonstrating entitlement to wage loss benefits. Claimant cross-appeals, contending first that the deputy's order was insufficient in that it included no express findings of permanent impairment and MMI date. Claimant's second point on cross-appeal charges as error the deputy's failure to order the E/C to pay for the services of a physician chosen by claimant after the E/C had refused her request for a change of physicians. The question whether the deputy's order included insufficient findings of ultimate fact is mooted by our determination that claimant has failed to demonstrate her entitlement to wage loss benefits.
Claimant's industrial accident occurred on September 5, 1979, when she slipped and fell, injuring her coccyx. She initially received conservative treatment from a general practitioner but when her symptoms persisted she was referred to Dr. Parr, an orthopedic surgeon. Dr. Parr diagnosed coccygodynia, and administered injections of steroids and xylocaine. Claimant subsequently reported that the injections were not providing any relief so on February 18, 1980, Dr. Parr hospitalized her and surgically removed her coccyx. Although Dr. Parr had expected that claimant would be able to return to work about two months after the surgery, she continued to complain of pain so in August Dr. Parr readmitted her to the hospital and excised a portion of her sacrum. Claimant's condition improved after the August surgery and on September 5, 1980, Dr. Parr discharged her to return to work without limitation. Claimant subsequently consulted an attorney who referred her to Dr. Freed, another orthopedist. When she first saw Dr. Freed on October 29, 1980, he determined that she had already reached MMI and that there was no medical reason why she should not return to work. Drs. Parr and Freed both testified that the coccyx is a vestigial anatomic structure and that its removal does not affect anatomic function.
The law applicable to this case is Section 440.15(3)(b), Florida Statutes (1979):
(b) Wage-Loss Benefits 
1. Each injured worker who suffers any permanent impairment ... may be entitled to wage-loss benefits under this subsection. Such benefits shall be based on actual wage-loss... . Such wage-loss benefits shall be, subject to the maximum compensation rate as set forth in s. 440.12(2), equal to 95 percent of the difference between 85 percent of the employee's average monthly wage and the salary, wages, and other remuneration the employee is able to earn after reaching maximum medical improvement ....
2. The amount determined to be the salary, wages, and other remunerations the employee is able to earn after reaching the date of maximum medical improvement shall in no case be less than the sum actually being earned by the *929 employee, including earnings from sheltered employment. In the event the employee voluntarily limits his or her income or fails to accept employment commensurate with his or her abilities, the salary, wages, and other remuneration the employee is able to earn after the date of maximum medical improvement shall be deemed to be the amount which would have been earned if the employee did not limit his or her income or accepted appropriate employment. Whenever a wage-loss benefit as set forth in subparagraph 1. may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury. (emphasis supplied).
Although claimant's treating physician released her on September 5, 1980 to return to work without limitation, she made no effort to look for work until sometime after October of 1980. Claimant testified that she applied for work with several retailers but the record is devoid of evidence that her inability to obtain work with these retailers was a result of compensable injury. Claimant further testified that in February 1981 she obtained a position as a motel maid but that she was unable to handle the work due to her physical problems. In view of the fact that both physicians who testified in the case were of the opinion that claimant could work without limitation and was in need of no additional medical treatment, the claimant's testimony that she could not work is wholly inadequate to prove her entitlement to wage loss benefits. Lake County Commissioners v. Walburn, 409 S.W.2d 153 (Fla. 1st DCA 1982). Accordingly, the award of wage loss benefits is reversed.
Upon being discharged from the care of Dr. Parr on September 5, 1980 claimant filed a claim for benefits, asserting, inter alia, that she was dissatisfied with Dr. Parr's services and desired a change of physicians. When the E/C failed to select and authorize another physician to treat claimant, claimant's attorney sent her to Dr. Freed. Claimant, by cross-appeal, now assigns as error the deputy's failure to order the E/C to pay Dr. Freed's bills. Claimant argues in support of this contention that § 440.13(2), Fla. Stat. (1979), places the burden upon the E/C to offer alternative medical care or to obtain from the deputy a ruling that a change in medical care would not be in the best interest of the claimant. While claimant's interpretation of § 440.13(2) may be correct, her argument is unavailing since the statute deals only with change of physicians, and is inapplicable in this case. Claimant here accepted the services of Dr. Parr over a period of approximately eight months and through the performance of two surgeries. At the time she expressed dissatisfaction with Dr. Parr and requested a change of physicians, she had reached MMI, had already been released from his care, and was not, in fact, under the care of any physician. A claimant who has reached MMI and has been released by her physician is not ordinarily entitled to further medical treatment. Under the circumstances of this case, the burden was on the claimant to obtain a ruling from the deputy requiring the E/C to furnish additional medical treatment. The deputy correctly found that Dr. Freed's treatment was unauthorized and that the E/C should not be held responsible for payment of his charges.
Affirmed in part and reversed in part.
MILLS, J., concurs.
WENTWORTH, J., dissenting.
WENTWORTH, Judge, dissenting.
I would affirm on all issues except for the patent error of the deputy in applying § 440.13, Florida Statutes, to require claimant "to ask for a hearing" in order to get either a change of physician, or new authorization if the majority has correctly viewed Dr. Parr's release as a termination of his care. Termination of remedial treatment in this case plainly did not end the need for medical supervision, evidenced by continued prescribed medication as well as claimant's need for an accurate rating. The order correctly notes that Parr released claimant on September 8, 1980, with a conclusion she *930 had no permanent impairment, and following Dr. Freed's conflicting conclusion "Dr. Parr was ultimately forced to concede... a 5% rating pursuant to [the AMA] Guide." That conclusion, and related findings that claimant's temporary disability continued until September 8, 1980, adequately adjudicate the date of MMI and existence of permanent impairment. Escarra v. Winn Dixie Stores, Inc., 131 So.2d 483 (Fla. 1961).
I would also conclude that the competent substantial evidence standard for appellate affirmance is amply met by the record substantiation of the deputy's findings in support of wage loss:
8. For the month of September and thereafter, the claimant filed BCL-13B or wage loss forms for each of the months from September 1980 through and including February of 1981. As to the claimant's claim for wage loss benefits, the undersigned notes that the claimant is 21 years of age, and has graduated from the tenth grade with a C-D-F grade average. Subsequent to her schooling and having a child, she began to work at Oak Crest Enterprises gathering eggs. This was the claimant's first and only job prior to her slip and fall on the concrete which resulted in her surgeries and subsequent disability. It is apparent that she has no transferable skills from past employment and experience. The nature and extent of the claimant's injury and disabilities were discussed above. Subsequent to her injury, the claimant has looked for work which was appropriate to her and has actually located and tried to work at Vital Industries and later at a further job she found in the newspaper at the Holiday Inn performing maid type duties. This later job claimant was unable to continue for longer than approximately five weeks due to the continuous standing, lifting, repetitive bending type activities required of her. Claimant re-applied but was refused employment with the instant employer. The claimant testified and it is uncontroverted that she could physically perform the jobs at Oak Crest Enterprises, Vital Industries, or at the Holiday Inn were it not for the residual pain and problems she experiences subsequent to her two surgeries in the sacral area. The undersigned finds that the claimant is entitled to wage loss over the past time period indicated by her wage loss forms from September of 1980 through February of 1981, inclusive. How the claimant's condition progresses in the future and whether it meets the doctor's predictions is a matter for future consideration.