586 So.2d 1132 (1991)
KELLER KITCHEN CABINETS and Alexis, Inc., Appellants,
v.
John HOLDER, Appellee.
No. 88-3204.
District Court of Appeal of Florida, First District.
August 8, 1991.
On Motion for Certification and Rehearing October 16, 1991.
*1133 Rex A. Hurley and Steven S. Eichenblatt, of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for appellants.
Edward H. Hurt, Sr., of Hurt & Parrish, P.A., Orlando, Bill McCabe, of Shepherd, McCabe & Cooley, Longwood, for appellee.
PER CURIAM.
The employer/carrier appeal from an order of the judge of compensation claims which order held that the limitation period under Section 440.28, Florida Statutes (1977), is not applicable to bar the claimant's application for temporary total disability (TTD) benefits. We reverse.
Appellee/claimant suffered a compensable injury to his right knee on March 15, 1979. An order was entered in 1980 which found that appellee had reached maximum medical improvement (MMI) in February 1980 with a 40% permanent partial disability of the right lower extremity. Appellants were directed to pay 80 weeks of permanent partial disability (PPD) benefits and to provide continuing medical care. The order further stated that if in the future appellee should require a total knee replacement, this would be solely for relief of symptoms resulting from the compensable accident. This statement was stricken from the order on appeal. Keller Kitchen Cabinets v. Holder, 397 So.2d 434 (Fla. 1st DCA 1981). A dispute between the parties regarding medical care was resolved by a January 1985 order, which was not appealed and which did not address the issue of disability compensation.
Appellants paid the PPD and have provided continuing medical care up to the time of the hearing in the instant case. In March 1988 a total knee replacement, which the judge found to be necessitated by the 1979 compensable accident,[1] was performed upon appellee. Appellee sought *1134 TTD and other benefits relating to the knee replacement and subsequent recuperation.[2]
Appellants took the position that since appellee had previously reached MMI with a permanent partial impairment as found in the 1980 order, he could not obtain TTD benefits in 1988 without seeking modification of the 1980 order pursuant to Section 440.28, which provides in part:
Upon a deputy commissioner's own initiative, or upon the application of any party in interest, on the ground of a change in condition or because of a mistake in a determination of fact, the deputy commissioner may, at any time prior to 2 years after the date of the last payment of compensation pursuant to any compensation order ... review a compensation case in accordance with the procedure prescribed in respect of claims in s. 440.25 and, in accordance with such section, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation or award compensation.
Appellants asserted that since more than two years had passed since the last payment of PPD benefits, the limitation period expressed in Section 440.28 was operative to bar appellee's claim for TTD benefits.
The judge found that appellee was not required to proceed by way of modification and that his claim was therefore governed by Section 440.19(2)(a), Florida Statutes (1979), which provides that a claim for compensation is timely if filed within two years of the last furnishing of compensation or remedial treatment by the employer. As measured by this standard, appellee's claim was found to be timely because it was filed within two years of the last remedial treatment furnished to appellee by the employer.[3]
We agree with appellants that appellee was required to proceed by way of modification on his TTD claim. However, we remand for determination (on this record or additional evidence) of whether facts and circumstances intervening since the original order may prevent application of the statutory bar.
The date of MMI marks the point at which no further recovery or improvement from an injury or disease can reasonably be anticipated. There is no basis for setting a date of MMI while the healing process is still continuing. Hall v. Dade County School Board, 492 So.2d 768 (Fla. 1st DCA 1986). Remedial treatment is available to a claimant who has reached MMI only when the need therefor requires recognition of a change in MMI and re-entry of temporary disability status, with or without eligibility for other benefits. Value Construction, Inc. v. Sauer, 465 So.2d 631 (Fla. 1st DCA 1985); Manns Jiffy Food Mart v. O'Neil, 453 So.2d 78 (Fla. 1st DCA 1984); Lewis v. Town & Country Auto Body Shop, 447 So.2d 403 (Fla. 1st DCA 1984). A claimant may, however, still be entitled to post-MMI palliative treatment for relief of symptoms arising from the compensable injury. Mount Sinai Medical Center v. Cardoso, 527 So.2d 875 (Fla. 1st DCA 1988); Old Cove Condo *1135 v. Curry, 511 So.2d 666 (Fla. 1st DCA 1987).
Maximum medical improvement typically marks the end of temporary disability and the beginning of permanent disability. Clyatt Memorial, Inc. v. Scott, 394 So.2d 159 (Fla. 1st DCA 1981). Temporary total disability is generally unavailable for periods after the date of MMI except as above noted upon changed condition. Coca-Cola Bottling Company v. Tunson, 534 So.2d 910 (Fla. 1st DCA 1988); Department of Offender Rehabilitation v. Godwin, 394 So.2d 1091 (Fla. 1st DCA 1981). Except to the extent that Section 440.28 permits modification, compensation orders are governed by the same principles of res judicata and estoppel as are applied to judgments of courts. Wellcraft Marine Corporation v. Turner, 435 So.2d 864 (Fla. 1st DCA 1983).[4] Since the 1980 order established that appellee reached MMI from his knee injury in 1980, the TTD awarded in the instant case would appear to be inconsistent with that order. Accordingly, it is only by a modification of the 1980 award, based upon the statutory grounds, that appellee can claim TTD benefits. General Electric Company v. Spann, 479 So.2d 289, 290 (Fla. 1st DCA 1985); Washington v. Dade County School Board, IRC Order 2-3694 (Feb. 8, 1979); Bishop v. Pinellas Framing & Finishing, 414 So.2d 596 (Fla. 1st DCA 1982).[5] In Robinson v. JDM Country Club, 455 So.2d 1077, 1079 (Fla. 1st DCA 1984), we stated:
Modification is the statutory remedy provided for a claimant whose condition has changed following entry of a prior order. "The change of condition provision is designed to afford relief to a claimant whose condition either becomes progressively worse when not anticipated by the original diagnosis or is the product of evidentiary factors not known at the time of the initial claim proceeding." General Electric Co. v. Osborne, 394 So.2d 1089, 1090 (Fla. 1st DCA 1981).
Accord, Deneault v. Alachua County School Board, 555 So.2d 909 (Fla. 1st DCA 1990).
We acknowledge the line of cases holding that a claimant who is hospitalized after MMI due to the compensable injury is entitled to TTD benefits for the period of hospitalization and the period of recuperation which follows. Lopez v. Nabisco Brands, Inc., 516 So.2d 993 (Fla. 1st DCA 1987); Delgado v. LaQuinta Motor Inns, 457 So.2d 572 (Fla. 1st DCA 1984); Atkins v. Greenhut Construction Company, 447 So.2d 268 (Fla. 1st DCA 1983); Smitty's Coffee Shop v. Florida Industrial Commission, 86 So.2d 268 (Fla. 1956). See also Palm Beach County Board of County Commissioners v. Roberson, 500 So.2d 180 (Fla. 1st DCA 1986) (TTD benefits properly awarded for time spent in rehabilitation program after MMI); Emergency One, Inc. v. Williams, 431 So.2d 251 (Fla. 1st DCA 1983) (temporary disability benefits properly awarded for period following date that physician set as the date of MMI, where physician released claimant for work without restrictions but subsequently modified *1136 recommendation to impose restrictions). However, these cases are distinguishable.
In Smitty's Coffee Shop, the earliest Florida decision finding a right to TTD benefits after MMI, and the case which provides the authority for the later cases providing for post-MMI TTD benefits, the claimant proceeded under Section 440.28 in applying for the additional benefits. In Palm Beach County and Atkins, the claimant also proceeded by way of Section 440.28. In Lopez and Delgado the establishment of MMI and the claim for post-MMI TTD benefits were part of one proceeding, so Section 440.28 and the time limitations prescribed therein were not at issue. Furthermore, in Williams we directed that the order be amended to reflect termination of MMI status at the time temporary benefits were reinstated. We also observed: "The circumstances in the present case present no necessity for consideration of when an award of temporary benefits, after final adjudication of MMI, may constitute a modification of the prior order." 431 So.2d at 252, n. 1. None of these cases involved the scenario apparently presented in the instant case, in which (1) a final order has fixed a date of MMI and the parties' consequent rights and responsibilities, including the claimant's entitlement to disability benefits; and (2) after the time for modification has passed, the claimant seeks further benefits which are not contemplated by the original order and are inconsistent with the terms of that order. Accordingly, we hold that a claimant who petitions for application of the exception recognized in Smitty's after he has reached MMI, as found in a previous order, is ordinarily required to proceed by way of Section 440.28.
In the case at bar, notwithstanding the foregoing, the facts and circumstances intervening since the original order may prevent application of the statutory bar. There appears to be no question that remedial care has been provided (by order or otherwise) without interruption. Although provision of such benefits has not been deemed to be payment of "compensation" within the terms of Section 440.28, the award or voluntary payment of remedial (as opposed to palliative) care after adjudication of MMI appears to recognize the claimant's re-entry of a temporary disability status (whether or not TD compensation is paid or payable). The furnishing of remedial care is therefore an implicit modification of a prior MMI and permanency determination based on a change of condition, since remedial care is clearly consistent only with some expectation of potential improvement.
Whether or not those facts would necessarily have any legal or equitable effect in application of the statutory terms, such circumstances should be considered because the statute must be construed consistent with its purpose as a qualification of otherwise applicable res judicata doctrines. The statute is explicit that the prescribed two-year limitations period commences only with the last payment of compensation "pursuant to" a prior order. The character of payments actually made is therefore significant and to be determined by context as well as the label assigned upon payment, although either party may be foreclosed by stipulation or otherwise to raise such issues.
The current order before us resolves the claim on the ground that only the limitations period in Section 440.19 need be applied, which conclusion we now reverse. Unless the judge determines expressly that the parties have waived all factual issues, the judge should determine on remand (1) whether the parties' conduct and intervening proceedings after the original order have effectively accomplished a later legal or equitable modification of the permanency adjudication, or affected the character of compensation payments made, and (2) what effect that would necessarily have on the legal and equitable accrual or waiver of the limitations defense under Section 440.28.
Although the temporary disability resulting from surgery on which the present claim is based does appear to have been "contemplated" by the original order, it was then necessarily denied as speculative, *1137 not mature, and inconsistent with the commencement of permanent disability benefits at that time. The complex structure of Chapter 440, Florida Statutes, by which temporary and permanent benefits are separately defined, measured, and limited both in duration and amount, must be taken into account in any application of the statutory limitations provisions which qualify res judicata principles.
For the foregoing reasons, the current TTD claim represents a changed condition which is prima facie within the terms of Section 440.28, even though it was a contemplated change. This follows from the unavoidable conclusion that the original order adjudicated and set at rest the fact of claimant's eligibility for permanent disability benefits based on MMI, which under the statutory scheme excludes temporary disability benefits absent modification under Section 440.28.[6]
We reverse and remand for further proceedings consistent with this opinion. Since the award of attorney's fees to appellee was based partially upon the award of TTD benefits, we also reverse and remand such fee award for further consistent proceedings.
NIMMONS, J., and WENTWORTH, Senior Judge, concur.
ZEHMER, J., dissents with written opinion.
ZEHMER, Judge (dissenting).
I respectfully dissent. The majority opinion construes and applies the Florida Workers' Compensation Act so as to deprive an injured employee of the right to obtain temporary disability benefits consequent to a compensable knee operation simply because the operation did not happen to become necessary until more than two years after the last payment of permanent partial disability compensation benefits, notwithstanding the fact that all medical opinion at the time of the original award contemplated that such an operation was going to be necessary in the future. This result is said to be mandated because the original award of permanent disability benefits constituted a final determination of the employee's rights to compensation benefits which bars further compensation benefits for temporary disability unless timely modified pursuant to section 440.28, Florida Statutes. In my view, this result is not mandated by any specific provision of chapter 440, and permits a statute of limitation to bar a particular claim before it comes into being. The judge's ruling in the appealed order that this claim for temporary disability compensation benefits is a new claim governed by the statute of limitations in section 440.19(2)(a) is correct and should be affirmed.

I.
Section 440.28 provides that a claim for modification is timely only if filed "prior to 2 years after the date of the last payment of compensation pursuant to any compensation order." The term "compensation" is defined in section 440.02(6) as meaning "the money allowance payable to an employee or to his dependents as provided for in this chapter." This definition of the term "compensation" has been in the statute for decades. As early as 1941 this statutory definition of compensation was said to support the notion that the Florida Workers' Compensation Act draws a distinction between medical benefits and disability compensation benefits, and that for purposes of modification of disability compensation benefits pursuant to section 440.28, it was necessary that the claim be filed within two years of the last payment of disability compensation to be timely. Royer v. United States Sugar Corp., 148 Fla. 537, 4 So.2d 692 (1941). This construction of the act has remained consistent over the ensuing years and been applied numerous times to bar a claim for further disability compensation benefits even though medical benefits continue to be paid. E.g. Dean v. McLeod, 270 So.2d 726 (Fla. 1972); Brantley v. ADH Building Contractors, Inc., *1138 215 So.2d 297 (Fla. 1968); Mansell v. Mulberry Const. Co., 196 So.2d 436 (Fla. 1967); Food Fair Stores, Inc. v. Tokayer, 167 So.2d 563 (Fla. 1964); Ford v. Alexander Cabinet Co., 467 So.2d 1050 (Fla. 1st DCA 1985); Budget Luxury Inns v. Boston, 407 So.2d 997 (Fla. 1st DCA 1981). Early on, the harsh and sometimes irrational results that flowed from this construction and application of the act have led the court to look for ways to avoid the strict time bar of the statute. Thus, in Townsley v. Miami Roofing Co., 79 So.2d 785 (Fla. 1955), the court stated:
It might perhaps be noted that, in other jurisdictions under their own particular Workmen's Compensation Acts, it is generally held that the payment of medical and hospital bills by the employer is pursuant to and in acknowledgment of his liability under the Act and that this constitutes a payment of compensation, or a waiver which suspends the running of the time for filing a claim for compensation. See cases collected in the annotation in 144 A.L.R. beginning at page 617. [Citations omitted.] No question of waiver by or estoppel against the employer as to the statutory limitation period was present in the Royer case, as it affirmatively appeared that the medical services relied on in that case as tolling the running of the two-year limitation period were furnished to the claimant with the express understanding that no further compensation would be paid to him; and the holding of this court in the Royer case was eminently correct, under the facts there present.
79 So.2d at 787-788. The majority opinion in the instant case is consistent with this long-standing construction of the act, and it remands for further consideration of the time bar under section 440.28 in light of the possible application of waiver or estoppel as allowed by the quoted discussion from Brantley v. ADH Building Contractors, Inc.
It is not my purpose to unilaterally change such a long-standing construction of chapter 440, but it is noteworthy that none of the cited cases, nor any other Florida case of which we are aware, has ever considered the precise language of section 440.10, the section that imposes liability on the employer under the act, as it relates to section 440.28. Section 440.10 reads in pertinent part:
(1) Every employer coming within the provisions of this chapter ... shall be liable for, and shall secure, the payment to his employees, or any physician, surgeon, or pharmacist providing services under the provisions of s. 440.13, of the compensation payable under ss. 440.13, 440.15, and 440.16.

(Emphasis added.) Of course, section 440.13 establishes the employee's right to receive remedial medical treatment, while sections 440.15 provides for compensation for disability. Thus, it is evident that section 440.10 treats the payment of medical benefits under 440.13 as "compensation" payable by the employer under the act, and is to that extent seemingly in conflict with the definition of compensation in 440.02(6). Therefore, it can be reasonably postulated that unless the word "compensation" as used in section 440.28 is construed to have the same meaning as and to be coextensive in application to the employer's obligation to pay the "compensation" required by section 440.10, which includes payments for medical benefits, the statutory scheme presents a patent ambiguity as to the meaning of the act when read as a whole. As the workers' compensation act is required to be liberally construed in favor of the claimant so as to resolve all ambiguities in favor of coverage for the employee, Daniel v. Holmes Lumber Co., 490 So.2d 1252 (Fla. 1986), it would seem only reasonable that the compensation referred to in the section 440.28 time limitation must necessarily include payments for remedial medical benefits under section 440.13. This construction of section 440.28 is consistent with the legislative intent now expressed in section 440.19 in regard to the tolling of the two-year period for filing claims for disability compensation benefits being tied to the payment of either disability compensation benefits or remedial medical benefits.
*1139 To so construe the act, however, is beyond the power of this court because it would require overturning or receding from a line of decisions of the Florida Supreme Court. It would be appropriate for that court to reconsider those cases in light of section 440.10, as this ambiguity inherent in the language of that section has never been addressed by either this court or the supreme court in any prior case.

II.
My principal disagreement with the majority's holding lies in their conclusion that claimant's claim is not a new claim for disability compensation benefits governed by the time limitations in section 440.19 because the 1980 order forecloses any future payment of compensation benefits for temporary disability and must be timely modified pursuant to section 440.28, even though such benefits are directly caused by his having to undergo the total knee replacement operation that the employer and carrier admit they are obligated to pay for under the act. Whether or not the employer's concession of liability for this remedial medical care may serve to avoid the two-year limitation period in section 440.28 under the concepts of waiver or estoppel discussed above, chapter 440 should be construed and applied so as to avoid the anomalous situation presented here, in which the injured employee must undergo a compensable medical operation that directly causes temporary disability without being able to collect any compensation benefits caused thereby. This construction of the workers' compensation act serves to pass to society the responsibility for a worker's disability that is directly attributable to an industrial act, contrary to the basis purpose of the act.

A.
The critical facts in this case are uncomplicated. On March 15, 1979, claimant suffered a compensable accidental injury that caused a permanent injury leaving him with a permanent partial disability upon reaching maximum medical improvement. He filed a claim for temporary and permanent disability benefits in September 1979. The case came on for hearing in September 1980. Judge Householder found that claimant reached maximum medical improvement by February 19, 1980, with "40% permanent partial disability of the right lower extremity." The order also recited that claimant had an underlying arthritic condition in his right knee "but specifically [found] that this condition was asymptomatic and non-disabling at the time of the accident." The order also provided:
It is further my finding that in the event the claimant shall require a total knee replacement at some date in the future, the same would be solely for relief of the symptoms caused by the aggravation of his pre-existing condition, which symptoms are the direct result of the subject accident.
This finding was predicated on medical testimony, similar to that often adduced in personal injury cases in which damages include the cost of future medical expenses based on the reasonable probability of a predictable worsening of one's current medical condition and functional disability that would require additional surgery in the future.[1] The order, dated November 25, 1980, awarded claimant continuing medical benefits and permanent partial disability benefits for 80 weeks on the basis of claimant's then medical condition and disability.
On the ensuing appeal by the employer and carrier, the award of benefits was affirmed, but the quoted provision regarding *1140 the knee replacement operation was struck from the order without comment. Keller Kitchen Cabinets v. Holder, 397 So.2d 434 (Fla. 1st DCA 1981). While the court declined to state the reason for this ruling, the only conceivable basis had to be that any issue regarding a claim for benefits due to a total knee replacement operation and resulting disability was premature and not ripe for adjudication because claimant's medical condition had not then deteriorated to the point that such an operation was demonstrably required, a fact that the order had actually found. The underlying scheme of the workers' compensation statute contemplates giving relief to a claimant through sequential awards pursuant to adjudications made when and as the right to additional benefits factually matures (in direct contrast to the one-shot approach inherent in personal injury damage judgments in a tort claim). It is readily understandable, then, that any determination of claimant's right to disability benefits incident to the eventual performance of knee replacement surgery in the future would be speculative and could not be ruled on at that time. By the same token, as the medical evidence before the judge in 1980 reflected, that order was not based on any consideration of the debilitating effect such surgery would have on the ultimate extent of claimant's disability, whether temporary or permanent, in arriving at the 40 percent disability of the lower extremity rating used as the basis for awarding 80 weeks PTD benefits. Clearly, claimant's 1980 award could not and did not include any disability compensation benefits that would later be attributable to a total knee replacement operation. Thus, even though claimant was said to have reached MMI in February 1980, that finding was not made in recognition that he would not have further need for "remedial treatment" from a physician or surgeon pursuant to section 440.13, nor that when such surgery was required that he would not sustain further temporary, and possibly even greater permanent, disability.
The scheduled permanent partial disability benefits were paid out over the ensuing 80 weeks, and claimant was provided medical treatment continuously until the claim now under review was filed in 1988. A dispute arose in 1984 over the payment of a medical bill to Dr. Griffin, the authorized attending physician, but the judge found that "the residuals of the trauma of the accident on March 15, 1979 and the underlying arthritic condition is merged unto one overall, inseparable condition and that the care and attention rendered by Dr. Griffin was responsible and necessary." In an order dated January 31, 1985, the employer and carrier were directed to pay disputed bills for the physician's past services and prescribed medicines, and for further medical services by that doctor on account of claimant's described medical condition, "whether it be for the underlying condition or the residuals of the industrial trauma which superimposed on and merged with said condition." Claimant thereafter continued treatment with Dr. Griffin on approximately a monthly basis.
Eventually, claimants knee condition worsened as anticipated and the medical need for a total knee replacement came to pass. The operation was accomplished in March 1988, a date substantially more than two years after the last payment of any "permanent disability compensation benefits" pursuant to the 1980 order. The employer and carrier denied responsibility for any costs associated with the operation, and as a result claimant was compelled to file a claim for medical expenses, disability compensation benefits, and attorneys' fees and costs. The employer and carrier did not dispute the causal relationship between the 1979 accident and the need for this surgery, and they eventually agreed at the hearing held on September 14, 1988, to pay the claimant's hospital bill totaling $17,923; but they defended the claim for disability compensation benefits incidental to the surgery on grounds that it was barred by the two year statute of limitation in section 440.28. On the issues so joined, Judge Householder ruled in pertinent part:
In review of my prior Order, I find that the claimant was found to have reached the point of maximum medical recovery and had a 40% permanent, physical *1141 impairment of his lower extremity, which was paid. I find that the claimant has reverted to a temporary total status and find that he has been temporarily totally disabled at the time he was hospitalized and for the recuperative period subsequent to the curative procedures as necessitated by the compensable injury. (Delgado v. La Cantina Motor Inn, 457 So.2d 572; ...) (Lopez v. Nabisco Brands, Inc., 516 So.2d 993).
As to the defense of the Statute of Limitations, I find that the Statute has not run either on his medical care or his workers' compensation, in that medical care was continually furnished to the claimant from the time of the accident to the present... .
* * * * * *
The claimant was injured in March, 1979, at which time the Statute of Limitations had a separate Statute pertaining to the barring of claims under said Statutes; one in reference to compensation and the other in reference to medical care. In 1979, during the time that the claimant had a valid claim pending and being paid, the legislature enlarged the Statutes of Limitations in 440.19(b) to say that the Statute of Limitations shall run from the last payment of compensation or the last medical care rendered. It is stipulated and agreed in this case that the medical care had been continuous from that time to the present. Therefore, under the Supreme Court's interpretation of the above-mentioned,[2] the Statute on compensation had not run on this case.
I reject the employer/carriers (sic) position that Florida Statute 440.28 applies, in that I find the claimant does not have to seek modification of the prior Order to receive TTD benefits.
Obviously, this claim for temporary disability compensation benefits did not come into being until made necessary by the admittedly compensable knee replacement operation. Thus it was characterized by Judge Householder as a new claim for benefits governed by section 440.19(2)(a).[3] The judge likewise concluded that section 440.28 was not implicated because no modification of provisions granting relief in the 1980 or 1985 orders was required to award temporary disability compensation benefits in this instance.
I believe the judge's ruling is correct and readily justified. The judge was faced with this court's opinion that struck her finding in the 1980 order regarding the causal relationship between the 1979 industrial accident and anticipated medical need for knee replacement surgery in the future, a ruling that could only mean that any claim for compensation benefits due to resulting disability from this surgery was premature and could not be adjudicated at that time. Being confronted with a judicial determination that the current claim for temporary disability benefits was not ripe for adjudication when the 1980 order was rendered, the judge properly treated the instant claim as having first matured, i.e., come into being, at such time as the claimant's medical condition required the knee replacement surgery. Under these circumstances, Judge Householder correctly applied the legal principle that, although the claimant had reach MMI years before and had been paid permanent disability benefits, he became "entitled to temporary total disability benefits for a period of hospitalization and recuperation following curative procedures *1142 necessitated by [his] compensable injury. Delgado v. La Quinta Motor Inns, 457 So.2d 572 (Fla. 1st DCA 1984)." Lopez v. Nabisco Brands, Inc., 516 So.2d 993 (Fla. 1st DCA 1987). Likewise, Judge Householder correctly ruled that the carrier's furnishing of medical care pursuant to the 1980 order continuously to the filing of the current claim was sufficient to avoid any bar to this claim by the two-year limitation in section 440.19(2)(a). Finally, the judge correctly ruled that modification pursuant to section 440.28 was not required because the claim for benefits incident to the knee replacement surgery was not matured and adjudicated in 1980, and that no adjudication in either prior order required modification to allow these additional temporary benefits.
Modification of a prior order under section 440.28 is necessary only to avoid application of the principles of res judicata, which preclude the relitigation of matters that were or should have been adjudicated in a prior proceeding resulting in a final order or judgment. The essential elements that must exist before res judicata becomes applicable to bar a claim are: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality and capacity of the person for or against whom the claim is made. 32 Fla.Jur.2d, Judgments and Decrees § 107 (1981). It is axiomatic that a premature claim not ripe for adjudication when a prior judgment or order was made is not subject to the doctrine of res judicata, because an unripe claim cannot meet the required elements of identity in the things sued for or identity of the cause of action. See 32 Fla.Jur.2d, Judgments and Decrees §§ 110-112 (1981). Orders of a judge of compensation claims under chapter 440 are subject to the same principles of res judicata, estoppel by judgment, and law of the case as are judgments of a court, except as provided in section 440.28. Hodges v. State Road Dep't, 171 So.2d 523 (Fla. 1965); Boston v. Budget Luxury Inns, 474 So.2d 355 (Fla. 1st DCA 1985). Although section 440.28 allows modification of things already adjudicated within the two-year statutory period, it obviously follows that modification under section 440.28 is neither necessary nor appropriate in respect to a claim for compensation benefits arising out of a particular industrial accident unless that particular claim was either adjudicated or was ripe and should have been adjudicated when the prior order or award was rendered. Caron v. Systematic Air Services, 576 So.2d 372 (Fla. 1st DCA 1991).
In summary, resort to section 440.28 is only required to reopen claims for benefits that have been explicitly or by necessary implication adjudicated in a previous order because they have become barred by principles of res judicata, collateral estoppel or law of the case. Reference to section 440.28 is neither necessary nor appropriate in respect to the claim now under review because this claim for temporary disability compensation benefits was not, and could not have been, adjudicated by the 1980 order for the reason that it was not yet ripe for adjudication. This element essential to the application of res judicata has not been satisfied. That being so, Judge Householder was correct in not looking to the statutory exception to that doctrine provided in section 440.28.

B.
The majority opinion's conclusion requiring modification pursuant to section 440.28 is based on the rationale that claimant's status at MMI and his entitlement to permanent disability compensation benefits under the act were adjudicated in the 1980 order, and that adjudication terminated any further right to receive temporary disability compensation in the future, even though the need therefor should be directly caused by an admittedly compensable remedial medical operation. This rationale is based on an analysis of prior appellate decisions in which the courts recognized that the injured employee's claim for temporary disability benefits after reaching MMI had proceeded by way of modification of prior orders pursuant to section 440.28. While that is undoubtedly true in the cited cases, not one of those cases, nor any other case to my knowledge, has ever directly addressed *1143 and decided the precise issue presented in this case.
The critical foundation for the majority's rationale is the stated principle that an adjudication of permanent disability benefits based on MMI "excludes temporary disability benefits absent modification under Section 440.28." No statutory language is cited in support of this conclusion, and I have searched chapter 440 in vain attempting to find any. Rather, this principle of law is based only on a conclusion inferred from a series of principles extracted from case decisions, none of which has directly addressed the precise issue presented here. The plain language of the statutes belies this conclusion.
Section 440.19(d) states that, "A claim may contain a claim for both past benefits and continuing benefits in any benefit category in default at the time the claim is filed." It is perfectly plain that this provision precludes a claimant from filing a claim in a particular "benefit category" until it matures and is ripe for adjudication, because a claim cannot be made until the employer is in default in respect to that benefit category. Nothing in chapter 440 states that, once a claimant's condition has changed from one benefit category to another, an award of benefits in the second category precludes future resort to benefits in the first if the employee's changing medical condition should give rise to a new claim in the first benefit category. This is so in respect to both medical treatment and to compensation benefits.
For example, section 440.13 establishes an injured employee's right to "medically necessary remedial treatment, care, and attendance" by persons qualified to do so, and provides that this medical benefit shall be furnished "for such period as the nature of the injury or the process of recovery may require." The clear language of the statute indicates that remedial medical benefits are payable for so long as they are needed by the injured employee, and often after the injured employee has reached maximum medical improvement. Yet, it has been repeatedly held in case law that when an injured employee reaches maximum medical improvement, he no longer can receive remedial medical treatment although he may receive palliative treatment. The term "palliative" is a word of art created by the courts, as it is not to be found anywhere in chapter 440. The courts' distinction between remedial treatment and palliative treatment is predicated on the notion that an injured employee who has reached maximum medical improvement no longer needs remedial treatment to improve his medical condition, and so after MMI the employee is only entitled to medical treatment that mitigates or relieves the effects of the injuries. E.g. Pan American World Airways, Inc. v. Weaver, 226 So.2d 801 (Fla. 1969); Mobley v. Jack & Son Plumbing, 170 So.2d 41 (Fla. 1964); City of Orlando v. Blackburn, 519 So.2d 1017 (Fla. 1st DCA 1987); Old Cove Condo v. Curry, 511 So.2d 666 (Fla. 1st DCA 1987); Baron Transport v. Riley, 491 So.2d 1220 (Fla. 1st DCA 1986); Professional Administrators v. Macias, 448 So.2d 1159 (Fla. 1st DCA 1984); Khawam v. Collision Clinics International, Inc., 413 So. 827 (Fla. 1st DCA), rev. denied, 419 So.2d 1196 (Fla. 1982); Lopez v. Pennsuco Cement & Aggregates, Inc., 401 So.2d 875 (Fla. 1st DCA 1981). This concept thus created two distinct benefit categories, i.e., "remedial treatment" before MMI and "palliative treatment" after MMI, and this in turn led to the legal proposition that "concurrent findings of maximum medical improvement and the necessity of continuing medical care are erroneous as a matter of law." Giffen Industries of Orlando v. Campbell, 8 F.C.R. 157 (IRC 1973). This legal proposition was thereafter picked up in court decisions as an established legal principle that precludes an award of remedial medical benefits after an injured employee reaches MMI. E.g. Killebrew Manufacturing Co. v. Dawson, 401 So.2d 876 (Fla. 1st DCA 1981) ("remedial treatment is inappropriate after determining a date for maximum medical improvement"); Oak Crest Enterprises, Inc. v. Ford, 411 So.2d 927 (Fla. 1st DCA 1982) ("A claimant who has reached MMI and has been released by her physician is not ordinarily entitled to further medical treatment"); Lake County *1144 Commissioners v. Walburn, 409 So.2d 153 (Fla. 1st DCA 1982) ("concurrent findings of MMI and the necessity of continuing medical care are erroneous as a matter of law"); Florida Structures, Inc. v. Morton, 443 So.2d 444 (Fla. 1st DCA 1984); City of Gainesville v. Helton, 458 So.2d 1195 (Fla. 1st DCA 1984); Lewis v. Town & Country Auto Body Shop, 447 So.2d 403 (Fla. 1st DCA 1984). The clear implication in these cases was that remedial medical benefits are simply unavailable after reaching MMI unless MMI is timely modified, and further claims for remedial medical benefits after MMI were denied in many cases on that theory.
There is ample case law that supports the award of remedial medical benefits after an employee has reached MMI, however. For example, in Di Giorgio Fruit Corp. v. Pittman, 49 So.2d 600 (Fla. 1950), the supreme court reviewed an order requiring the employer and carrier to pay for continuing medical care to keep his thrombophlebitis under control. The testifying doctors agreed that the claimant would never recover from this condition, and that the thrombophlebitis resulted from the work-related knee injury. The nature of this medical condition was such that a flare-up occurred every two or three months, at which time the claimant's legs became swollen, red, and tense, his temperature rose, and he experienced considerable pain. The supreme court construed section 440.13(3)(a), which required the employer and carrier to furnish "such additional treatment as may be necessary to effect a recovery" as the nature of the injury required, to mean that the employer was obligated to provide continuing treatment to the claimant in that case. The court stated that
in this modern era of extensive scientific research, it is not possible to say with certainty today that any disease is incurable for no one knows but that tomorrow will herald a new miracle drug. At any rate, we humans find much comfort in the old adage, "While there is life, there is hope."
49 So.2d at 603.
Similarly, in Goldsmith v. Buena Vista Construction Co., 304 So.2d 110 (Fla. 1974), the supreme court reversed an order denying the claimant's claim for protective eyeglasses. The claimant had lost the sight in his left eye due to a work-related injury. His physician told him to take every precaution to protect his remaining eye from injury, and prescribed protective glasses for this purpose. The employer and carrier refused to pay for them and the deputy commissioner denied the claim. The supreme court held that section 440.13(1) required the employer and carrier to provide the glasses because the nature of the injury created a lasting condition requiring permanent protection or care of the right eye because of the possibility of hazard that might cause its loss. The court stated that:
... the remedial treatment and care for claimant's impaired vision condition created by his industrial injury did not stop at the point of the medical treatment required for the loss of his left eye but that the resulting condition in which claimant was left after his injury also requires attention, protection, and care within the intendment of Section 440.13(1), F.S., to the extent the expert testimony indicated was essential.
304 So.2d at 112.
In Platzer v. Burger, 144 So.2d 507 (Fla. 1962), the evidence proved that the claimant would need medical treatment consisting of dilation of the urethra, medical prescriptions, and treatment for prostatitis for the rest of his life. The deputy commissioner denied the claim for such treatment for the rest of his life or as long as qualified doctors continued to indicate a need therefor on the ground that such an order would be tantamount to tolling the statute of limitations in section 440.13(3)(b), Florida Statutes. The supreme court reversed, stating that section 440.13
drives us to a conclusion that when it is shown that the claimant's need for remedial attention will continue for a long and indefinite period of time, the statutory language lends itself to a construction which permits the claimant to file a claim and secure an order requiring the employer *1145 to "... furnish to the employee such remedial treatment, care, and attendance under the direction and supervision of a qualified physician or surgeon, or other recognized practitioner, nurse or hospital, and for such period, as the nature may of the injury or the process of recovery may require... ."
144 So.2d at 508. Cf. Corral v. McCrory, 228 So.2d 900 (Fla. 1969).
Recognizing that remedial medical treatment may be warranted after an injured employee has reached MMI without modifying the order establishing MMI, the courts have now concluded that medical care characterized as "palliative" is in fact "remedial" within the meaning of sections 440.13 and 440.19, and have allowed recovery on claims therefor filed under section 440.19 more than two years after the claimant reached MMI because the employer had made payments for "palliative" care during the two year time limitation period. E.g. Thomas v. Jacksonville Electric Authority, 536 So.2d 310 (Fla. 1st DCA 1988); City of Orlando v. Blackburn, 519 So.2d 1017 (Fla. 1st DCA 1987). These awards have been made on the basis of a new claim for benefits under section 440.19 without requiring modification of any previous order establishing claimant at MMI, thereby establishing that the claimant is limited to palliative medical treatment and permanent disability compensation benefits.
The point of this discussion is that the statutory scheme of the Florida Workers' Compensation Act clearly contemplates that an injured employee's medical condition may significantly worsen after MMI due to reasons causally related to the original injury, and that the intent of the act is to provide coverage for the care and treatment of such conditions. The act also contemplates that a worsened medical condition coming about after MMI often causes more severe disability, temporary in nature, while the medical condition is being treated. Accordingly, the courts have allowed recovery of further compensation for such temporary disability due to the worsened medical condition. E.g. Smitty's Coffee Shop v. Florida Industrial Comm'n, 86 So.2d 268 (Fla. 1956); Lopez v. Nabisco Brands, Inc., 516 So.2d 993 (Fla. 1st DCA 1987); Delgado v. LaQuinta Motor Inns, 457 So.2d 572 (Fla. 1st DCA 19894); Atkins v. Greenhut Construction Co., 447 So.2d 268 (Fla. 1st DCA 1983); Palm Beach County Board of County Commissioners v. Roberson, 500 So.2d 180 (Fla. 1st DCA 1986); Emergency One, Inc. v. Williams, 431 So.2d 251 (Fla. 1st DCA 1983). While the claimants apparently proceeded under section 449.28 in those cases, nothing in the statutory language of chapter 440 required that they do so. Just as the cases recognizing the right to further remedial medical treatment after MMI allowed the claim to be filed as a new claim under section 440.19 and did not require modification of the prior orders establishing MMI, likewise there is no statutory necessity for the claimant to proceed by way of modification of the prior order establishing MMI when filing a new claim for temporary disability compensation benefits incident to necessary medical treatment after MMI. The court's direction in Williams to reflect termination of claimant's MMI status does not mean that modification thereof was necessary as a condition precedent to recovering further temporary disability benefits. The only language in chapter 440 limiting an injured employee's right to receive temporary disability benefits caused by an existing medical condition is that limiting the extent of such benefits to the time period stated in section 440.15.
Finally, I do not agree with the statement in the majority opinion that this case involves a claim "for further benefits which are not contemplated by the original order and are inconsistent with the terms of that order." (Op. at p. 1136.) The record in this case contains medical evidence at the hearing leading to the 1980 order which anticipated, without dispute, that claimant would need a total knee replacement operation as a result of his industrial injury. The only dispute was whether it should be done then or be deferred for up to ten years. The order entered by Judge Householder recognized this, although this court struck the recitation for unexplained reasons. It is, therefore, *1146 simply not correct to say that this claim was not contemplated when the 1980 order was entered.
The obvious consequence of the holding in the majority opinion requiring modification of the MMI and PTD adjudications in the prior order as predicate to considering any claim for temporary disability compensation thereafter filed, even though such claim was not ripe and could not be adjudicated at the time, is to place the claimant in a classic "Catch 22" situation ("A paradox in which seeming alternatives actually cancel each other out, leaving no means of escape from a dilemma.").[4] The inescapable dilemma here is that claimant's injury, although continuously recognized as likely to worsen and require a full knee replacement when the 1980 order was entered, cannot serve as the basis for disability compensation benefits resulting from such operation in the future because this issue was not then ripe for adjudication; yet, when the surgery becomes necessary as predicted, a claim for disability compensation resulting therefrom is barred because the order, which could not adjudicate his claim, must be modified within two years of the last payment of permanent compensation benefits before he can assert his claim. In other words, unless claimant fortuitously needs the operation within the two year time period specified in section 440.28, he can never even assert the claim when it does arise. I agree with claimant that to so construe and apply a statute of limitations, i.e., to cut off the right to make the claim before it accrues, is patently unconstitutional. Vilardebo v. Keene Corp., 431 So.2d 620 (Fla. 1st DCA 1983).
I realize that the construction of chapter 440 urged in this dissent may seemingly conflict with statements of principles found in the cases cited in the majority opinion, but I am not aware of any case having the same facts and historical development as this case. Judge Wentworth has appropriately emphasized "the fact specific nature of any inquiry as to when a prior order granting or denying such care, or other statutory benefits, may implicate section 440.28, when the current and prior claims involve identity of issues." Caron v. Systematic Air Services, 576 So.2d 372, 376-377 (Fla. 1st DCA 1991). Certainly, on the basis of the unique facts existing in this case, those prior cases do not require modification of this 1980 order that explicitly did not adjudicate the claim here presented.
For all of these reasons, I would affirm.

ON MOTION FOR CERTIFICATION AND/OR REHEARING
PER CURIAM.
Motion by appellee Holder for rehearing/certification is denied except with respect to the following question of great public importance which we certify to the Supreme Court of Florida pursuant to Fla. App. Rule 9.030(a)(2)(A)(v):
Is a compensation claim under Ch. 440, F.S., for temporary disability during knee replacement surgery, and for consequential impairment (cf. City Investing v. Roe, 566 So.2d 258 (Fla. 1st DCA 1990), pending S.Ct. 76-702), governed by Sec. 440.28 or by Sec. 440.19(1)(a) when permanent disability compensation has been previously awarded and paid under a compensation order which determined maximum medical improvement at a time when future surgery was uncertain?
MINER, J., and WENTWORTH, Senior Judge, concur.
ZEHMER, J., concurs in certification with written opinion.
ZEHMER, Judge (concurring in certification).
I would grant the motion for rehearing and affirm the appealed order for the reasons stated in my original dissenting opinion. However, I concur in certifying the question presented in this case to the supreme court as a question of great public importance. I prefer to phrase the question somewhat differently than the majority, however, because I do not view the determination of maximum medical improvement (MMI) in the prior order as constituting *1147 a conclusive termination, absent timely modification under section 440.28, of claimant's right to temporary benefits incident to timely filed medical claims that were not ripe for adjudication when the order on MMI was entered. The critical issue, as I see it, is whether the 1988 claim for temporary disability benefits is a new claim for disability and medical benefits arising out of the 1979 accidental injury that could not have been previously asserted and is thus cognizable pursuant to section 440.19. This is the ruling of the judge of compensation claims that is reversed by the majority opinion.
In Daniel v. Holmes Lumber Co., 490 So.2d 1252 (Fla. 1986), the supreme court treated the 1983 claim for disability and medical benefits arising out of the covered 1978 industrial injury as a new claim cognizable pursuant to section 440.19. While it does not appear that any order was ever entered in that case in respect to the benefits voluntarily paid in 1978 by the employer and carrier on account of that injury, the lack of an order should have no material bearing on determining that the subsequent claim for benefits is a new claim under section 440.19 so long as it is for benefits that could not have been asserted previously. In short, I am unable to reconcile the majority opinion in this case with the supreme court's treatment of the subsequent claim in Daniel v. Holmes Lumber Co.
I am satisfied, however, that the question stated by the majority is sufficient to satisfy all jurisdictional requirements for review of this case by the supreme court. As discussed in my dissenting opinion, much of the confusion surrounding this issue is tied to older supreme court decisions, so it is entirely appropriate that the supreme court review and clarify the correct interpretation and application of those decisions in light of the express provisions of the workers' compensation act applicable to the issues in this case.
NOTES
[1] This finding is not challenged on appeal and is accepted as correct.
[2] Only the TTD award is at issue in this appeal.
[3] At the time of appellee's compensable accident, Section 440.19(1)(a), Florida Statutes (1977), provided:

(1)(a) The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within 2 years after the time of injury, except that if payment of compensation has been made or remedial treatment has been furnished by the employer without an award on account of such injury a claim may be filed within 2 years after the date of the last payment of compensation or after the date of the last remedial treatment furnished by the employer. (e.s.)
Chapter 79-40, Laws of Florida, which took effect soon after appellee's accident, deleted the qualifying term "without an award" and renumbered Section 440.19(1)(a) as 440.19(2)(a). (Note: the original section number, 440.19(1)(a), has since been restored.) The judge applied the amended statute under the principle announced in such cases as Garris v. Weller Construction Company, 132 So.2d 553 (Fla. 1960), that where a statutory amendment lengthens the limitation period for filing a claim, the amendment applies to claims which are still viable at the time of the amendment. In light of our holding that Section 440.28 provides the applicable limitation period, we need not address the merits of the trial court's application of the amended statute.
[4] This court has recently observed that this section creates an exception to traditional notions of finality based on res judicata, law of the case, or estoppel by judgment. Massie v. University of Florida, 570 So.2d 963, 973 (Fla. 1st DCA 1990). We would also note that an essential element of res judicata is identity of the thing sued for. Subsequent workers' compensation claims will not be foreclosed on res judicata grounds where this element is absent. Northwest Orient Airlines v. Gonzalez, 500 So.2d 699, 701 (Fla. 1st DCA 1987); Boston v. Budget Luxury Inns, 474 So.2d 355, 357 (Fla. 1st DCA 1985).
[5] In case law applying the pre-1979 Act, the qualifying term "without an award" found in Section 440.19(1)(a) is cited as a ground for requiring the claimant seeking additional compensation to meet the stricter time limitation requirements of Section 440.28, since benefits furnished pursuant to an earlier order did not act to toll the time limitations of Section 440.19. University of Florida v. McLarthy, 483 So.2d 723 (Fla. 1st DCA 1985); Bassett's Dairy v. Thomas, 429 So.2d 1356 (Fla. 1st DCA 1983); Jones v. Ludman Corporation, 190 So.2d 760 (Fla. 1966). Of course, this distinction does not apply to claims for compensation arising under the Act as amended in 1979. Assuming, without deciding, that the judge properly found appellee entitled to the benefit of the 1979 amendment, the instant TTD claim is still inconsistent with the terms of the 1980 order and must therefore meet the requirements applicable to a claim for modification.
[6] Cf. a roughly comparable condition, i.e., prosthesis replacement, which may be clearly contemplated but not awardable at the time of initial permanency, or later except pursuant to an express statutory exception. City Investing v. Roe, 566 So.2d 258 (Fla. 1st DCA 1990).
[1] While the record before the judge of compensation claims in 1980 contained a medical opinion that claimant was then in need of total knee replacement arthroplasty, the judge expressly rejected this evidence and accepted the opinion of another physician recommending against such an operation at that time for this 42-year old claimant who performed manual labor. This latter physician cautioned that such surgery "would be fraught with many difficulties. Within five to ten years, it would have to be revised or the knee would have to be fused." He opined that such an operation would require "probably a minimum of three weeks in the hospital. I would not advise anyone with a total knee [replacement] to return to manual labor."
[2] The order had previously cited Corbett v. General Engineering & Machinery Co., 160 Fla. 879, 37 So.2d 161 (1948); Robinson v. Johnson, 110 So.2d 68 (Fla. 1st DCA 1959); and Garris v. Weller Construction Co., 132 So.2d 553 (Fla. 1961), for the proposition that a statutory amendment enlarging the applicable statute of limitations should be applied to claims presented after the effective date of the amendment.
[3] Section 440.19(2)(a), Florida Statutes (1979), provided:

The right to compensation for disability, impairment, or wage loss under this chapter shall be barred unless a claim therefor which meets the requirements of paragraph (d) is filed within 2 years after the time of injury, except that, if payment of compensation has been made or remedial treatment has been furnished by the employer on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or after the date of the last remedial treatment furnished by the employer.
[4] American Heritage Dictionary, verba "Catch 22," p. 212 (New.Col.Ed. 1979).